IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

———————

**PREMIER PHYSICIANS GROUP, PLLC, AN ARIZONA PROFESSIONAL LLC, DBA PREMIER PAIN MANAGEMENT, LLC, AN ARIZONA LIMITED LIABILITY COMPANY,**
*Plaintiff/Appellant,*

*v.*

**KIMBERLY NAVARRO AND EDDIE NAVARRO, WIFE AND HUSBAND,**
*Defendants/Appellees.*

———————

No. CV-15-0323-PR
Filed August 30, 2016

———————

Appeal from the Superior Court in Maricopa County
The Honorable Mark F. Aceto, Judge
No. CV2014-090145
**AFFIRMED**

Opinion of the Court of Appeals, Division One
238 Ariz. 156, 357 P.3d 840 (App. 2015)
**VACATED**

———————

COUNSEL:

H. Lee Dove, Trevor J. Fish, (argued), Evans, Dove & Nelson, P.L.C., Mesa, Attorneys for Premier Physicians Group, PLLC dba Premier Pain Management, LLC

Joel DeCiancio (argued), Christopher Robbins, Hill, Hall & DeCiancio, PLC, Phoenix, Attorneys for Kimberly and Eddie Navarro

David L. Abney, Dana R. Roberts, Knapp & Roberts, P.C., Scottsdale; and Geoffrey M. Trachtenberg, Levenbaum Trachtenberg, PLC, Phoenix, Attorneys for Amicus Curiae Arizona Association for Justice/Arizona Trial Lawyers Association

———————

JUSTICE BOLICK authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE PELANDER, and JUSTICES BRUTINEL and TIMMER joined.

_____

JUSTICE BOLICK, opinion of the Court:

**¶1**        We granted review to decide when a non-hospital health care provider may perfect a lien to secure its charges.  This case turns on the statutory requirement that such a lien must be recorded "before or within thirty days after the patient has received any services relating to the injuries . . . ."  A.R.S. § 33-932(A).  We hold that the statute requires providers to record their liens within thirty days after first providing services.

**I.**

**¶2**        Between June and October 2011, Premier Physicians Group ("Premier") treated Mandy Gipson for injuries sustained in a car accident allegedly caused by Kimberly Navarro.  Health care providers like Premier are statutorily entitled to record liens for their "customary charges" in treating an injured person; such liens apply to claims the injured person may have for damages related to the injury that required treatment.  A.R.S. § 33-931(A).  These liens are perfected by recording pursuant to A.R.S. § 33-932.  On September 16, 2011, Premier recorded a lien to secure payment of approximately $12,000 for its services.  In March 2013, the Navarros' insurer paid Gipson directly to settle her claim but did not satisfy the lien.  Gipson failed to pay Premier for the services it rendered to her.

**¶3**        In January 2014, Premier sued the Navarros under A.R.S. § 33-934 to enforce the lien.  The Navarros moved to dismiss the action because the lien was recorded more than thirty days after Premier first provided services to Gipson.  Premier argued that § 33-932(A) allowed it to perfect the lien within thirty days after services were last provided.  Agreeing with the Navarros' statutory interpretation, the trial court dismissed the complaint.

**¶4**        The court of appeals reversed, interpreting § 33-932 as allowing health care providers to record liens within thirty days after the final service but reaching back only to charges incurred within the thirty days before the lien was recorded.  *Premier Physicians Grp., PLLC v. Navarro*,

238 Ariz. 156, 357 P.3d 840 (App. 2015). The court also granted attorney fees to Premier as the prevailing party on appeal under A.R.S. §§ 33-934(B), 12-341. *Id.* at 159 ¶ 11, 357 P.3d at 843. The Navarros filed a petition for review as to the court of appeals' statutory interpretation and the attorney fees award.

¶5        We granted review because the recording requirement for perfecting health care provider liens is a legal question with statewide significance. *See Blankenbaker v. Jonovich*, 205 Ariz. 383, 385 ¶ 7, 71 P.3d 910, 912 (2003). We have jurisdiction under article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## II.

¶6        The Court reviews orders granting a motion to dismiss de novo. *Coleman v. City of Mesa*, 230 Ariz. 352, 355 ¶ 7, 284 P.3d 863, 866 (2012). We also review statutory interpretation issues de novo. *State v. Hansen*, 215 Ariz. 287, 289 ¶ 6, 160 P.3d 166, 168 (2007).

¶7        The statutes at issue "extend to health care providers a remedy not available under the common law—the ability to enforce a lien against those liable to the patient for damages in order to secure the providers' customary charges for care and treatment of an injured person." *Blankenbaker*, 205 Ariz. at 388 ¶ 22, 71 P.3d at 915. Before 1988, such liens were available only to hospitals; that year, they were extended to non-hospital health care providers through A.R.S. §§ 33-931, -932. 1988 Ariz. Sess. Laws, ch. 298, §§ 2, 3 (2d Reg. Sess.). We refer to those liens collectively as "medical liens," but there are important distinctions between hospital and non-hospital health care provider liens that inform our statutory interpretation.

¶8        To perfect a medical lien, a health care provider must strictly comply with statutory recording requirements. *See Nationwide Mut. Ins. Co. v. Arizona Health Care Cost Containment Sys.*, 166 Ariz. 514, 517, 803 P.2d 925, 928 (App. 1990) ("Although Arizona lien statutes are remedial and are to be liberally construed, their provisions must be strictly followed."). Those requirements are set forth in § 33-932(A):

In order to perfect a lien granted by § 33-931, the executive officer, licensed health care provider or agent of a health care provider shall record, before or within thirty days after the patient has received any services relating to the injuries, except a hospital which shall record within thirty days after the patient is discharged, in the office of the recorder in the county in which the health care provider is located a verified statement in writing setting forth all of the following:

1.      The name and address of the patient as they appear on the records of the health care provider.

2.      The name and location of the health care provider.

3.      The name and address of the executive officer or agent of the health care provider, if any.

4.      The dates or range of dates of services received by the patient from the health care provider.

5.      The amount claimed due for health care.

6.      For health care providers other than hospitals or ambulance services, to the best of the claimant's knowledge, the names and addresses of all persons, firms or corporations and their insurance carriers claimed by the injured person or the injured person's representative to be liable for damages arising from the injuries for which the person received health care.

¶9      We interpret statutes "to give effect to the legislature's intent." *Parrot v. DaimlerChrysler Corp.*, 212 Ariz. 255, 257 ¶ 7, 130 P.3d 530, 532 (2006). A statute's plain language best indicates legislative intent, and when the language is clear, we apply it unless an absurd or unconstitutional result would follow. *See, e.g.*, *Sell v. Gama*, 231 Ariz. 323, 327 ¶ 16, 295 P.3d 421, 425 (2013). Ambiguity arises when the language is reasonably susceptible to differing interpretations. *Lewis v. Debord*, 238 Ariz. 28, 30-31 ¶ 8, 356 P.3d 314, 316-17 (2015). When a statute is ambiguous, we determine its meaning by considering secondary factors, such as the statute's context,

4

subject matter, historical background, effects and consequences, and spirit and purpose. *See Baker v. Univ. Physicians Healthcare*, 231 Ariz. 379, 383 ¶ 8, 296 P.3d 42, 46 (2013). When possible, we seek to harmonize statutory provisions and avoid interpretations that result in contradictory provisions. *See, e.g.*, *State v. Bowsher*, 225 Ariz. 586, 589 ¶ 14, 242 P.3d 1055, 1058 (2010).

**¶10**　　　　The parties both argue that the plain meaning of the words "within thirty days after the patient has received any services" in § 33-932(A) supports their respective readings. But because a patient "has received any services" (that is, "some" services) on both the first day of services and last, that language in isolation lends itself to two reasonable interpretations: the provider must record the lien within thirty days after the patient has *first* received services or it must record the lien within thirty days after the patient *last* received services.

**¶11**　　　　The court of appeals agreed with the Navarros that reading § 33-932(A) as permitting a non-hospital provider to record a lien within thirty days after the provider last provides services eliminates the statutory distinction between non-hospital health care providers and hospitals, which alone are allowed to perfect liens under § 33-932(A) "within 30 days after it has discharged its patient." *Premier*, 238 Ariz. at 157-58 ¶ 6, 357 P.3d at 841-42. But the court also disagreed with the Navarros' construction because it inserts "an additional requirement into the statute, effectively changing it to require a non-hospital health care provider to record a lien within 30 days after the patient *first* receives any services relating to the injuries." *Id.* at 158 ¶ 7, 357 P.3d at 842.

**¶12**　　　　Instead, the court interpreted the statute to provide a rolling deadline, in which a non-hospital health care provider may record a lien within thirty days following any services between the first and last, but only for charges incurred within thirty days before the lien was recorded and any subsequent charges. *Id.* at 159 ¶ 9, 357 P.3d at 843. "This construction," the court concluded, "maintains the distinction between hospitals and non-hospital health care providers" and promotes the lien statutes' purpose to "lessen the burden on hospitals and other medical providers imposed by non-paying accident cases." *Id.* (quoting *Blankenbaker*, 205 Ariz. at 387 ¶ 19, 71 P.3d at 914). Under this holding, Premier could recover charges beginning thirty days prior to recording the lien but not before then.

¶13        We find no support in the statutory language for the court of appeals' conclusion that the statute creates such a rolling deadline.  Section 33-932(A) establishes specific triggering events.  For hospitals, it is "within thirty days after the patient is discharged," which establishes a time certain. For non-hospital health care providers, it is "before or within thirty days after the patient has received any services."  Given the clear triggering event established for hospitals, it would be anomalous to construe the latter language as a rolling rather than fixed deadline without the statute expressly saying so.

¶14        Premier suggests the court of appeals appropriately construed the lien requirements here like the statutory scheme for mechanic's liens, which allows lienholders to recover charges incurred twenty days before service of the preliminary lien notice and thereafter, but not before then.  But the mechanic's lien statutes explicitly allow the provider "to claim a lien only for such labor, professional services, materials, machinery, fixtures or tools furnished within twenty days prior to the service of the notice and at any time thereafter."  A.R.S. § 33-992.01(E). In other words, under the mechanic's lien statute, the triggering event is service of the preliminary notice, whereas in the medical lien statute, the event is the provision of services (for non-hospital providers) or discharge (for hospitals).  The different statutory schemes underscore that the medical lien statute does not create a rolling deadline for non-hospital health care provider liens.

¶15        Because § 33-932(A) encompasses a specific triggering event, deciding whether that event occurs at the beginning or end of the provision of services does not require us to insert statutory language, as the court of appeals suggested, but rather to determine which time the legislature intended.

¶16        The meaning of the disputed language in this case is best discerned within its broader statutory context.  *See Robinson v. Shell Oil Co.,* 519 U.S. 337, 341 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."); *J.D. v. Hegyi*, 236 Ariz. 39, 41 ¶ 6, 335 P.3d 1118, 1120 (2014) (explaining that when determining a statute's meaning, words "cannot be read in isolation from the context in which they are used").  In construing

6

statutes, a "cardinal principle" of interpretation is to give effect to every clause and word.  *See Loughrin v. United States*, 134 S. Ct. 2384, 2390 (2014).  For several reasons, viewing the controlling language within the broader statutory context supports the Navarros' proposed construction that the lien must be recorded within thirty days after health care services are first provided.

¶17         The statute plainly treats hospitals and non-hospital health care providers differently in terms of lien recording requirements.  After stating the non-hospital recording requirement, § 33-932(A) provides, "except a hospital which shall record within thirty days after the patient is discharged."  If the recording deadline for non-hospital providers meant "within thirty days" of the final services provided, it would make the exception for hospitals superfluous.  *State v. Deddens*, 112 Ariz. 425, 429, 542 P.2d 1124, 1128 (1975) ("Statutes are to be given, whenever possible, such an effect that no clause, sentence or word is rendered superfluous, void, contradictory or insignificant.").  And it would make the requirements for hospitals and non-hospital providers essentially the same, with each permitted to record a lien within thirty days after final services.  By carving out the exception for hospitals, the legislature obviously intended different, not identical, treatment.

¶18         As to non-hospital health care providers, § 33-932(A) states that the lien must be filed "*before or* within thirty days after the patient has received any services." (emphasis added).  When two disjunctive terms modify the same action, each possibility must make sense standing alone.  The phrase "before . . . the patient has received any services," standing alone, is most reasonably understood as meaning before the patient has received initial services.  If a provider recorded a lien after services began, it would not be before the patient has received "any services."  Because "before" and "within thirty days after" each modify the same phrase, "the patient has received any services," that phrase is most reasonably understood as bearing the same meaning under either modifier, that is, when the patient initially receives any services.

¶19         This interpretation is also supported by the statutory requirements for the verified statement supporting the lien.  In such statements, "health care providers other than hospitals . . . to the best of the claimant's knowledge" must provide the names and addresses for any

persons or entities who may be liable for charges covered by the lien. § 33-932(A)(6). It makes sense to include the proviso "to the best of the claimant's knowledge" only in a non-hospital provider's verified statement because the required information is less likely to be known to the provider at the time it records its lien.

¶20 Other parts of the statutory scheme also contemplate and support our interpretation. Section 33-932(B) provides that the lien must state the amounts due and owing as of the recording date and state whether future services will be provided. The lien runs against all amounts incurred during this future period. All of the statutory provisions recognize that liens will be recorded early in treatment when the provider may not know how long treatment may continue or the identities of potential third parties responsible for payment. And permitting a lien to run into the future shows that the legislature contemplated a lien at the beginning rather than last treatment. Because liens are indexed by the patient's name, there is no need to await further information, as Premier argues.

¶21 Our interpretation thus gives meaning to all language in the statute and makes sense of the legislature's different treatment of hospitals and non-hospital providers. Health care services provided in connection with accidents can be of indefinite duration. Recording a lien within thirty days of providing initial services places insurers and other parties on notice that any settlements are subject to a lien. At the same time, the non-hospital provider will have a lien for charges incurred for the entire service duration. Hospitals, by contrast, typically provide services within a discrete and identifiable time frame, thus making it sensible to allow them to record a lien within thirty days after a patient's discharge.

¶22 Reading § 33-932(A) to permit non-hospital providers to record liens after final services also would undermine claims settlements, which our state's public policy favors. *See, e.g.*, *Sturges v. Bennett*, 47 Ariz. 470, 475-76, 56 P.2d 1038, 1040 (1936). Under that reading, the provider's right to record a lien would revive any time a patient returned for services relating to a particular accident—even after considerable intervening time.

¶23 Viewing the disputed language in the context of the entire statute thus yields only one reasonable interpretation. For these reasons, we conclude the legislature intended § 33-932(A) to require non-hospital

providers to record liens before services are first provided or within thirty days thereafter. Premier's lien was not timely recorded, and the trial court therefore properly dismissed Premier's claim against the Navarros.

## III.

¶24 Section 33-934(B) authorizes an award of reasonable attorney fees to a "prevailing party" in an action arising under § 33-931. Because Premier is no longer the prevailing party, we need not decide whether the court of appeals correctly awarded Premier fees. We, therefore, reverse the court of appeals' award of attorney fees and costs to Premier.

¶25 The Navarros seek attorney fees and costs for litigation in this Court. They are entitled to recover costs pursuant to A.R.S. § 12-342 and we exercise our discretion to award them reasonable fees as the prevailing parties under § 33-934(B).

## IV.

¶26 We vacate the opinion of the court of appeals and affirm the trial court's dismissal of Premier's complaint. We award reasonable attorney fees and costs incurred in this Court to the Navarros upon compliance with ARCAP 21(b).