IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**BRENDA D.**,
*Appellant*,

*v.*

**DEPARTMENT OF CHILD SAFETY, Z.D.**,
*Appellees*.

---

No. CV-17-0136-PR
Filed February 9, 2018

---

Appeal from the Superior Court in Maricopa County
The Honorable Susanna C. Pineda, Judge
No. JD21476
**AFFIRMED**

Opinion of the Court of Appeals, Division One
242 Ariz. 150 (App. 2017)
**VACATED**

---

COUNSEL:

H. Clark Jones (argued), Law Office of H. Clark Jones, LLC, Mesa, Attorneys for Brenda D.

Mark Brnovich, Arizona Attorney General, Dominic E. Draye, Solicitor General, Paula S. Bickett, Chief Counsel, Civil Appeals Section, Amber E. Pershon (argued) and Toni M. Valadez, Assistant Attorneys General, Phoenix, Attorneys for Department of Child Safety

Thomas A. Vierling, Vierling Law Offices, Phoenix, Attorneys for Z.D.

---

VICE CHIEF JUSTICE PELANDER authored the opinion of the Court, in which CHIEF JUSTICE BALES, and JUSTICES BRUTINEL, GOULD, and LOPEZ joined. JUSTICE

TIMMER, joined by JUSTICE BOLICK, filed an opinion dissenting in part and concurring in part.

_____

VICE CHIEF JUSTICE PELANDER, opinion of the Court:

¶1        After the Arizona Department of Child Safety ("DCS") initiates proceedings to terminate parental rights by motion under A.R.S. § 8-862(D), if a parent fails to appear at a termination adjudication hearing without good cause, Arizona law vests the juvenile court with discretion to find that the parent has waived his or her legal rights and admitted the motion's allegations. A.R.S. § 8-863(C); Ariz. R.P. Juv. Ct. ("Rule") 66(D)(2). We address here how the statute and rule apply when a parent, without good cause, appears late for a termination adjudication hearing, after the juvenile court has already found waiver.

¶2        We hold that a parent who fails to timely appear for a duly-noticed termination adjudication hearing has "failed to appear" under § 8-863(C) and Rule 66(D)(2). We further hold that if a juvenile court, faced with a parent's non-appearance, exercises its discretion to proceed with the hearing in the parent's absence after finding waiver of the parent's legal rights, the rights waived include the parent's due process rights to be present and to participate and testify in the hearing. If the parent never appears, when the hearing concludes the parent will be deemed to have admitted the factual allegations in the motion. On the other hand, if the parent appears late, but before the termination adjudication hearing is concluded, the parent may exercise his or her rights to testify, present evidence, and participate for the duration of the hearing; thus, the waiver of the parent's legal rights is effective only until the parent's arrival and then ends. The tardy parent, however, may not seek to start the hearing anew by re-examining witnesses or reopening evidence that has already been presented.

¶3        These waiver rules, however, do not apply to a parent's right to counsel at a termination adjudication hearing, a right that is unaffected by the parent's appearance or absence. A parent's counsel may fully participate in the hearing, including by contesting the motion's factual allegations. Finally, we hold that when a juvenile court finds that a parent waived his or her legal rights, the state must nevertheless satisfy its burden of proof by presenting sufficient evidence to establish an alleged ground for termination and for a finding that termination is in the child's best interests.

**I.**

¶4        Brenda D. is Z.D.'s biological mother. Z.D. was born in 2005 with Down Syndrome and has permanent special needs. In July 2014, DCS took custody of Z.D. and

filed a petition alleging that Z.D. was dependent due to Brenda's neglect. The juvenile court found Z.D. dependent in May 2015. The court ordered a case plan of family reunification. Over several months, DCS provided Brenda with various reunification and rehabilitative services, but Brenda's participation in those services was, at best, sporadic.

**¶5**      In October 2015, DCS filed a motion to terminate Brenda's parental rights. (DCS also filed a motion to terminate Z.D.'s multiple alleged fathers' parental rights, which are not at issue here.) As grounds for the severance, DCS alleged Brenda's history of substance abuse and Z.D.'s out-of-home placement. *See* A.R.S. § 8-533(B)(3), (B)(8)(a), (B)(8)(c) (authorizing, respectively, termination based on substance abuse, and out-of-home placement for six months and for fifteen months).

**¶6**      In early November, the juvenile court held an initial termination hearing, which Brenda attended. At that hearing the court scheduled the termination adjudication hearing for two days beginning on June 15, 2016, at 1:30 p.m. The court provided Brenda with a written notice ("Form 3") that contained the following provision:

> You are required to attend all termination hearings. If you cannot attend a court hearing, you must prove to the Court that you had good cause for not attending. If you fail to attend the Initial Termination Hearing, Termination Pretrial Conference, or Termination Adjudication Hearing without good cause, the Court may determine that you have waived your legal rights, and admitted the allegations in the motion/petition for termination. The hearings may go forward in your absence, and the Court may terminate your parental rights to your child based on the record and evidence presented.

Ariz. R.P. Juv. Ct. Form 3.

**¶7**      Form 3 also stated that the termination adjudication hearing was scheduled for June 15 and 16 at 1:30 p.m. Brenda signed the form, which the juvenile court also read in open court. *See* Rule 65(D)(3) (requiring the juvenile court at the initial termination hearing to notify a parent of the substance of Form 3). Brenda indicated that she understood the notice.

**¶8**      Nevertheless, Brenda did not appear on June 15, the first scheduled day of the termination adjudication hearing. Instead, she called the court and claimed that she was experiencing severe back pain. The court continued the start of the hearing until the next day and ordered Brenda to appear in person with medical documentation of her back pain.

¶9            The following day, however, Brenda again failed to appear at the 1:30 p.m. scheduled start time.  She called the court stating that she was running ten minutes late. But when the court began the hearing at 1:50 p.m., Brenda was still absent.  After noting that the State's counsel, the DCS case manager, the guardian ad litem, and Brenda's counsel were all present, the juvenile court found that Brenda did not have "good cause for her failure to appear" and that she "waived her right to contest."  The court also instructed Brenda's counsel that he only had "an opportunity to address . . . the weight of the evidence, not the admissibility of the evidence" during the hearing.  Brenda's counsel did not object.

¶10            The court proceeded with the termination adjudication hearing.  After the State questioned the DCS case manager, the guardian ad litem elicited testimony from that witness supporting termination of Brenda's parental rights.  Brenda's counsel, in turn, cross-examined the case manager about Brenda's history of substance abuse, participation in rehabilitative services, and behavior during supervised visitations with Z.D.

¶11            After the DCS case manager finished testifying, the juvenile court noted at 2:14 p.m. that Brenda had "just walked in."  The court then reviewed several exhibits and found that DCS had proven all three statutory grounds for termination by clear and convincing evidence.  While the court was in the process of finding by a preponderance of the evidence that termination was in Z.D.'s best interests, Brenda interjected, "No, it's not" and "I'm a good mom."  In addition, Brenda asked to "say something," but the court denied her request.

¶12            The juvenile court finished making its findings relating to Z.D.'s best interests and then terminated Brenda's parental rights.  The court stated, however, that if Brenda presented appropriate documentation of her back pain, she could move for reconsideration of the court's finding that she did not have good cause for her failure to appear at both scheduled days of the termination hearing.  Brenda did not move for reconsideration, produce any medical documentation, or otherwise challenge the court's finding of no good cause for her failure to appear on the first scheduled day of the termination hearing and for her tardy arrival on the hearing's second scheduled day.

¶13            The court of appeals, though accepting the juvenile court's finding that Brenda "had no good cause for her failure to appear at the start of the termination hearing," reversed the termination order and remanded for further proceedings. *Brenda D. v. Dep't of Child Safety*, 242 Ariz. 150, 153 ¶ 1, 154 ¶ 9 n.3 (App. 2017).  Addressing issues of statutory and rules interpretation not raised by Brenda, the court held that a parent has not "'failed to appear'" under A.R.S. § 8-863(C) and Rule 66(D)(2) "simply because he or she is tardy without good cause." *Id.* at 153 ¶ 1.  The court also held that the juvenile

court violated Brenda's due process rights and fundamentally erred by placing restrictions on her counsel's participation at the hearing before she arrived, *id.* at 157–58 ¶¶ 21–26, and by refusing to allow Brenda to testify after she arrived, *id.* at 156–57 ¶¶ 19--20. (On the latter point, Brenda neither raised as an issue nor argued that the juvenile court unconstitutionally precluded her from testifying. *Id.* at 158 n.6.)

¶14 We granted review because the case presents recurring issues of statewide importance. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## II.

¶15 We review the interpretation of statutes, court rules, and constitutional issues de novo. *Premier Physicians Grp., PLLC v. Navarro*, 240 Ariz. 193, 194 ¶ 6 (2016) (statutes); *State v. Fitzgerald*, 232 Ariz. 208, 210 ¶ 10 (2013) (court rules); *State v. Nordstrom*, 230 Ariz. 110, 115 ¶ 17 (2012) (constitutional issues). "If a statute's [or court rule's] language is subject to only one reasonable meaning, we apply that meaning," *Bell v. Indus. Comm'n of Ariz.*, 236 Ariz. 478, 480 ¶ 7 (2015), unless the meaning results in "an absurdity or constitutional violation," *Sell v. Gama*, 231 Ariz. 323, 327 ¶ 16 (2013). "When the language can reasonably be read more than one way, however, we may consider the statute's [or court rule's] subject matter, legislative history, and purpose, as well as the effect of different interpretations, to derive its meaning." *Bell*, 236 Ariz. at 480 ¶ 7.

¶16 DCS may initiate termination of parental rights proceedings by petition or motion. *See* A.R.S. §§ 8-533(A) (petition), -862(D) (motion). When DCS initiates such proceedings by motion, A.R.S. § 8-863(C) sets forth the consequences for a parent who does not appear at a termination adjudication hearing:

> If a parent does not appear at the hearing, the court, after determining that the parent has been served as provided in subsection A of this section, may find that the parent has waived the parent's legal rights and is deemed to have admitted the allegations of the petition by the failure to appear. The court may terminate the parent-child relationship as to a parent who does not appear based on the record and evidence presented as provided in rules prescribed by the supreme court.

¶17 As authorized by that statute, this Court promulgated Rule 66(D)(2) to give effect to the statutory directive. Rule 66(D)(2) provides:

> If the court finds the parent, guardian or Indian custodian failed to appear at the termination adjudication hearing without good cause shown, had

notice of the hearing, was properly served pursuant to Rule 64 and had been previously admonished regarding the consequences of failure to appear, including a warning that the hearing could go forward in the absence of the parent, guardian or Indian custodian and that failure to appear may constitute a waiver of rights, and an admission to the allegation contained in the motion or petition for termination, the court may terminate parental rights based upon the record and evidence presented if the moving party or petitioner has proven grounds upon which to terminate parental rights. The court shall enter its findings and orders pursuant to subsection (E) of this rule.

## A.

¶18　　　DCS argues the court of appeals erred in concluding that neither § 8-863(C) nor Rule 66(D)(2) requires a parent to "timely appear" for a scheduled and duly-noticed termination adjudication hearing, *Brenda D.*, 242 Ariz. at 155 ¶ 14, and that the juvenile court may not find waiver of the parent's legal rights unless a parent fails to appear at a hearing at all, *id.* at 156 ¶ 18. According to DCS, "Only after finding that the [non-appearing] parent has waived her rights may the juvenile court proceed in the parent's absence," because "proceeding with the hearing in the parent's absence" without first finding waiver would violate the parent's due process rights. Brenda counters, and the court of appeals agreed, that a parent "has not failed to appear without good cause merely by arriving tardy at a termination hearing" for purposes of § 8-863(C) and Rule 66(D)(2), and thus she did not waive any of her legal rights.

¶19　　　We agree with DCS. Both § 8-863(C) and Rule 66(D)(2) are premised on a juvenile court having previously scheduled a termination adjudication hearing and having properly notified a parent of the hearing date and scheduled start time. *See* Rule 64(C) (identifying the hearing notice's contents, including potential consequences of "failure to appear" at termination adjudication hearing); Rule 65(D)(3) (requiring juvenile court to advise parent at initial termination hearing of Form 3 contents and consequences of failure to appear at termination adjudication hearing, and to "make specific findings" on those points). The statute and rule implicitly, but necessarily, require a parent's timely appearance at the termination adjudication hearing and authorize a juvenile court, in its discretion, to find waiver of a parent's legal rights if she fails to timely appear. Rule 66(D)(2) clearly contemplates that a hearing will proceed in a parent's absence only after the juvenile court determines that the parent has "failed to appear."

¶20　　　When a parent fails to appear at a duly-noticed termination adjudication hearing, a juvenile court may invoke the substantive effects of that failure, including proceeding with the hearing in the parent's absence, only after finding that the

procedural prerequisites have been met. Rule 66(D)(2) requires the court to find that the parent had previously been notified of "the consequences of failure to appear." That notice must also include "a warning that the hearing could go forward in the absence of the parent." Rule 66(D)(2); *see also* Rule 64(C) (requiring notice to "advise the parent . . . that the hearing may go forward in the absence of the parent"). If we interpreted Rule 66(D)(2) as Brenda suggests, then such a warning would be unnecessary or meaningless because a juvenile court could only determine whether a parent has "failed to appear" at the end of the hearing, and therefore a hearing could not "go forward" without the parent. We will not interpret statutes or rules in a manner that renders portions of their text superfluous. *See Bilke v. State*, 206 Ariz. 462, 464 ¶ 11 (2003); *see also Chronis v. Steinle*, 220 Ariz. 559, 560 ¶ 6 (2009) ("We construe rules of court using the same principles applicable to interpretation of statutes.").

¶21 In addition to making part of Rule 66(D)(2) meaningless, Brenda's interpretation contravenes the principle that "[r]ules and statutes should be harmonized wherever possible and read in conjunction with each other." *State v. Hansen*, 215 Ariz. 287, 289 ¶ 7 (2007) (internal quotation marks omitted) (quoting *Phoenix of Hartford, Inc. v. Harmony Rests., Inc.*, 114 Ariz. 257, 258 (App. 1977)). Our interpretation gives meaning to Rule 66(D)(2) in its entirety and is consistent with § 8-863(C) and Rule 64(C). Accordingly, we hold that a parent who fails to timely appear for a scheduled and duly-noticed termination adjudication hearing has "failed to appear" under § 8-863(C) and Rule 66(D)(2). *Cf. Bob H. v. Ariz. Dep't of Econ. Sec.*, 225 Ariz. 279, 282 ¶ 12 (App. 2010) (concluding that the juvenile court did not err in determining that a parent lacked "good cause for her failure to appear on time" because "[w]hile it might be said that arriving late is better than not arriving at all, we cannot see how arriving late can constitute good cause for a failure to timely appear").

¶22 If a juvenile court determines under § 8-863(C) and Rule 66(D)(2) that a parent has "failed to appear" without good cause at a hearing, then the next issue is identifying the consequences of such a determination. As noted above, *supra* ¶¶ 19–20, Rule 66(D)(2) requires the juvenile court to make certain preliminary findings before invoking the rule's prescribed consequences for the parent's failure to appear. If the court makes those findings, including that the parent was warned that "the hearing could go forward in the absence of the parent" and that "failure to appear may constitute a waiver of rights," Rule 66(D)(2), the court is statutorily permitted to "find that the parent has waived the parent's legal rights," § 8-863(C) (providing that the court "may" (not "must") find that the non-appearing parent "has waived [her] legal rights and is deemed to have admitted the allegations of the petition . . . ."); *cf. Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 211 ¶¶ 19–20 (App. 2008) (recognizing that a parent has procedural due process rights in a termination adjudication hearing, but noting that a parent may waive those

rights if the waiver is "voluntary, knowing, and intelligent"; therefore, a parent's non-appearance at a hearing may constitute a "constructive waiver" of rights that the parent was "specifically informed he or she could lose by failing to appear").

¶23　　　We agree with DCS that, to avoid due process concerns, a juvenile court's discretionary finding of waiver based on a parent's failure to appear for a termination adjudication hearing should be made at the start of the hearing, before the proceeding commences. *Cf. State v. Garcia-Contreras*, 191 Ariz. 144, 146–49 ¶¶ 8–22 (1998) (recognizing that a criminal defendant has a due process right to be present at the defendant's trial and finding a violation of that right when a defendant who had not waived that right was absent during the entire jury selection proceeding). Although neither the statute nor rule are clear on that timing issue, we must strive to give them "meanings that avoid serious constitutional issues." *Bus. Realty of Ariz., Inc. v. Maricopa Cty.*, 181 Ariz. 551, 559 (1995); *see also Hayes v. Cont'l Ins.*, 178 Ariz. 264, 273 (1994) ("[I]f possible we construe statutes to avoid unnecessary resolution of constitutional issues."). Under our rules, absent waiver, a parent has a "right to trial by the court on the termination motion" and a "right to cross examine all witnesses who are called to testify against the parent." Rule 65(C)(5)(b)–(c). In addition, a parent has due process rights "to be present," "to participate," and to testify in the termination adjudication hearing. *Christy A. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 299, 306 ¶¶ 22, 24 (App. 2007). Because proceeding with a termination adjudication hearing in a parent's absence without first finding the parent's waiver would violate those fundamental rights, we do not construe the statute or rule as permitting, much less requiring, a juvenile court to defer a finding of waiver to the end of the hearing.

¶24　　　If the parent does not appear before the termination adjudication hearing concludes, then the waiver of the parent's legal rights is effective throughout the hearing, and at its completion (that is, at the close of evidence, when the matter is submitted for the court's decision), the parent will be deemed to have admitted the factual allegations in the motion. *See* § 8-863(C); *see also Manuel M.*, 218 Ariz. at 214 ¶ 30 (concluding that under § 8-863(C) and Rule 66(D)(2) "factual allegations are deemed admitted but legal conclusions are not"). On the other hand, if the parent appears late, but before the hearing's conclusion, then the waiver of the parent's legal rights is effective only for the portion of the hearing during which the parent was absent; the waiver ends upon the parent's appearance, even if the parent cannot show good cause for his or her tardy arrival. (In her partial dissent, Justice Timmer apparently agrees, noting that when a properly-notified parent appears late, the juvenile court "can find a voluntary waiver of the parent's right to participate at the scheduled time and then proceed with the hearing," *infra* ¶ 52.)

¶25　　　Neither § 8-863(C) nor Rule 66(D)(2) makes a juvenile court's discretionary,

front-end finding of waiver irrevocable, and to construe them in that way when a parent appears during a termination adjudication hearing to contest the state's motion would raise due process concerns. Therefore, to "avoid serious constitutional issues," *Bus. Realty of Ariz.*, 181 Ariz. at 559, we hold that if a parent appears late for a hearing, but at a stage of the proceedings where an opportunity to contest and present evidence still exists, it would be an abuse of the juvenile court's discretion to impose the full-waiver sanctions, including finding a waiver of the parent's right to contest the factual allegations in the motion. But the court's earlier finding of waiver remains effective as to the portions of the hearing during which the parent was absent, and the court need not start the hearing over or provide an opportunity for re-examining witnesses with the parent present.

¶26    Justice Timmer's partial dissent mischaracterizes our holding and overstates its practical effects. Contrary to its assertions, our interpretation of § 8-863(C) and Rule 66(D)(2) neither results in "grave consequences" for a parent who "arrives even minutes late for a termination adjudication hearing without good cause," nor "dilutes the state's burden of proof" by "robb[ing] [such a parent] of the ability to test the state's evidence." *Infra* ¶¶ 48, 54. These assertions badly distort what we clearly say. *See supra* ¶¶ 24–25, *infra* ¶¶ 30–31, 42.

¶27    Of course, courts "should not rewrite" statutes, but the dissent, while accusing us of doing so, is unconvincing in suggesting that the "plain language" of either § 8-863(C) or Rule 66(D)(2) expressly negates our interpretation or specifically answers the questions posed here. *Infra* ¶¶ 45, 50. Although claiming that its differing "interpretation" of the statute and rule is "correct," *infra* ¶ 44, the dissent does not persuasively refute that our interpretation comports with the relevant text and its underlying policies, accommodates constitutional rights and concerns, and more readily lends itself to reasonable application in juvenile court practice. (The dissent, for example, does not say what a juvenile court may or must do if a tardy parent, without good cause, appears at the very end of a termination adjudication hearing right before the evidence is closed.) The dissent also is internally inconsistent, construing § 8-863(C) as authorizing the juvenile court to find waiver only at the close of evidence and only as to "*all* legal rights *from that point forward*," when the statute's "plain language" does not say that. *Infra* ¶ 50 (emphasis added).

¶28    At bottom, however, there is very little practical difference between our positions. The dissent asserts that Rule 64(C) (which addresses only the notice and not the hearing itself) "implicitly authorizes the juvenile court to proceed in the parent's absence" as long as all procedural notice requirements have been met. *Infra* ¶ 52. But the reason a hearing may constitutionally "go forward" in a parent's absence is because the juvenile court is authorized to find, at the start of the hearing, that the parent waived her right to be present and participate, as the dissent acknowledges. *Id.*

¶29 The dissent is instead based on its disagreement with our holding that (1) before the juvenile court may find, at the start of the hearing, that the parent waived her right to be present, it must first find that the parent "failed to appear"; and (2) a "failure to appear" occurs if the parent does not timely attend. As discussed above, however, our holding is based on § 8-863(C), Rule 66(D)(2), and Rule 64(C), all of which support our interpretation. For example, Rule 64(C), on which the dissent relies, provides that the notice must inform a parent that "failure to appear" at the termination adjudication hearing "may result in a finding that the parent . . . has waived legal rights." The dissent would permit the juvenile court to find that a tardy parent waived the limited right "to participate at the scheduled time," *infra* ¶ 52, but does not address the condition explicitly provided in Rule 64(C) for a juvenile court to have that authority. Stated differently, when read as a whole and in context, Rule 64(C) (like § 8-863(C) and Rule 66(D)(2)) vests the juvenile court with discretion to find that the parent "waived legal rights" *only after* the court first finds that the parent "fail[ed] to appear." The dissent ignores that explicit condition in Rule 64(C), focuses instead on isolated words and phrases in the rule, and strangely analogizes to a criminal procedure rule that contains no such condition, Ariz. R. Crim. P. 9.1. *Infra* ¶ 53. Finally, we respectfully disagree with the dissent's reading of *Marianne N.* as authorizing a juvenile court to "go forward" with a termination adjudication hearing in a parent's absence without finding that the parent failed to appear and waived legal rights. *Infra* ¶ 53. That case does not address the issues here but suggests just the opposite. *See Marianne N. v. Dep't of Child Safety*, 243 Ariz. 53, 57–58 ¶ 22 (2017) (recognizing that Rule 64(C) "authorizes the juvenile court to 'go forward' with a termination adjudication hearing . . . *if* the parent *fails to attend* without good cause," in which case the court can proceed in the parent's absence under § 8-863(C) and "may then find that [the] parent has waived her legal rights by failing to appear" (emphasis added)).

**B.**

¶30 The waiver principles discussed above do not limit a parent's right to counsel in a termination adjudication hearing, regardless of whether the parent fails to appear for or is tardy in attending such hearing. Even when a juvenile court exercises its discretion at the start of a hearing to find that a parent waived the parent's legal rights by failing to appear, the absent parent does not waive the right to counsel at the hearing. *See* A.R.S. § 8-221(B) (requiring the juvenile court to appoint counsel for an indigent parent); Rule 38(B) (same); Rule 65(C)(2) (same); Rule 65(C)(5)(a) (requiring the juvenile court to advise a parent of the parent's right to counsel); *Christy A.*, 217 Ariz. at 307 ¶ 28 (stating that in "termination adjudication hearings, indigent parents have a right to appointed counsel"). And to comply with due process principles, we hold that the absent parent's counsel has a right to fully participate in the hearing on the parent's behalf, including a

right to cross-examine the state's witnesses, object to proffered evidence, and present witnesses or other evidence. *See Bob H.*, 225 Ariz. at 283 ¶¶ 14–18 (holding that the juvenile court violated a parent's due process rights by proceeding with a termination hearing before the parent's counsel arrived); *cf. Manuel M.*, 218 Ariz. at. 211–12 ¶¶ 19–23 (concluding that a parent does not waive the parent's due process right to the assistance of counsel by failing to appear at a termination hearing because Rule 66(D)(2) does not specify that the parent waives that right and because "waiver of that specific right could not result without such a warning").

¶31        Therefore, a juvenile court's finding that a non-appearing parent waived his or her legal rights does not limit the parent's counsel's right or ability to fully participate in a termination adjudication hearing.  Moreover, because a parent is statutorily "deemed to have admitted" only the factual allegations in the motion when the parent fails to attend any part of the termination hearing, we hold that a parent's late arrival does not preclude the parent's counsel from contesting the motion's factual allegations at any point during the termination hearing.

## C.

¶32        When a juvenile court finds that a parent waived the parent's legal rights by failing to appear, we hold that the state must nevertheless meet its burden of proof by presenting sufficient evidence to establish a ground for termination and that termination is in the child's best interests.  *See* § 8-863(C) (stating that the juvenile court "may terminate the parent-child relationship as to a parent who does not appear based on the record and evidence presented"); Rule 66(D)(2) (stating that the juvenile court "may terminate  parental rights based upon the record and evidence presented if the moving party or petitioner has proven grounds upon which to terminate parental rights"); *Manuel M.*, 218 Ariz. at 213–14 ¶¶ 26–28 (concluding that, even when a parent fails to appear at a hearing and is deemed to have admitted the factual allegations in the motion, "the determination of whether the evidence, including admissions, establishes clearly and convincingly at least one ground for terminating a parent's rights remains a relevant and contestable topic at the hearing"); *cf. Santosky v. Kramer*, 455 U.S. 745, 747–48 (1982) (holding that in a contested proceeding, "[b]efore a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence").

¶33        Applying the above principles to this case, we conclude that the juvenile court did not err in finding at the start of the termination adjudication hearing that Brenda waived her legal rights by failing to timely appear without good cause. Accordingly, the court of appeals erred in holding that "a parent has not 'failed to appear' simply because he or she is tardy without good cause," *Brenda D.*, 242 Ariz. at 153 ¶ 1, and in implicitly

concluding on that basis that the juvenile court's finding of waiver at the start of the hearing was error, *id.* at 156 ¶ 18 (holding that "only if a parent has failed to appear by the time both parties have fully presented their case, may the court treat the parent's absence as a waiver of the parent's legal rights").

**¶34** The court of appeals also held that the juvenile court violated Brenda's due process rights in restricting her counsel's participation at the termination adjudication hearing by permitting him to address only the "weight of the evidence," not its admissibility. *Id.* at 153 ¶ 1, 156–57 ¶¶ 21–26. We agree, and the State properly concedes that point.

**¶35** The court of appeals' final holding, however, is debatable. The court sua sponte held that the juvenile court violated Brenda's due process rights and fundamentally erred by refusing to allow her "to testify based on a tardy arrival." *Id.* at 153 ¶ 1. According to the court of appeals, Brenda "repeatedly entreated" the juvenile court "for an opportunity to be heard" and "objected to the [juvenile] court's denial of her right to testify." *Id.* at 156 ¶ 19. But viewed "in the light most favorable to upholding the juvenile court's order," *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549 ¶ 7 (App. 2010), the record does not support the court of appeals' factual premises. At best, the record merely reflects that the juvenile court denied Brenda's single request to "say something" after the court orally ordered her parental rights terminated. From the sparse record, it is not clear at all that Brenda wanted to testify, much less what her testimony might have addressed; nor did she or her counsel object to any alleged denial of the right to testify.

**¶36** Even assuming the juvenile court violated Brenda's due process right to testify (a point the State does not concede) as well as her right to full participation of counsel, we (unlike the court of appeals) find no basis for reversal on those grounds. Brenda argues that we should apply "reversible error" review to the due process violations in this case. We disagree. This case is materially distinguishable from cases on which Brenda relies and that purportedly applied "reversible error" review. In those cases, Arizona courts stated that it is "reversible error" for a juvenile court to violate a parent's right to counsel by either (1) refusing to appoint the parent counsel in a termination hearing, *e.g.*, *Christy A.*, 217 Ariz. at 307 ¶¶ 26–29; *Daniel Y. v. Ariz. Dep't of Econ. Sec.*, 206 Ariz. 257, 260 ¶ 12, 262–63 ¶ 25 (App. 2003), or (2) proceeding with the termination hearing without the parent's counsel present, *e.g.*, *Bob H.*, 225 Ariz. at 282–83 ¶¶ 14–18. This case does not involve either of those two scenarios, and we decline to extend "reversible error" review to this case.

**¶37** Because Brenda did not object to either of the alleged due process violations in the juvenile court (and did not even raise the alleged violation of her right to testify in

the court of appeals), we conclude that fundamental error review applies. *See Cecilia A. v. Ariz. Dep't of Econ. Sec.*, 229 Ariz. 286, 287 ¶ 1, 289 ¶ 11 (App. 2012) (in considering "whether the juvenile court violates a mentally impaired parent's due process rights when it fails to suspend a parental severance hearing until the parent can regain the ability to meaningfully participate in the proceedings and assist counsel," the court stated that the parent waived her due process "argument by failing to raise it to the juvenile court," and therefore reviewed it "only for fundamental error"); *see also Monica C. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 89, 93–95 ¶¶ 21–27 (App. 2005) (stating that a parent's claims of due process and rules violations in termination proceedings were subject to fundamental error review because the parent did not object in the juvenile court).

¶38        Under fundamental error review, Brenda "bears the burden to establish that (1) error exists, (2) the error is fundamental, and (3) the error caused [her] prejudice." *State v. Bearup*, 221 Ariz. 163, 168 ¶ 21 (2009) (internal quotation marks omitted) (quoting *State v. Smith*, 219 Ariz. 132, 136 ¶ 21 (2008)). To determine whether an error is fundamental, we must engage in the "fact intensive" inquiry that asks whether the error "goes to the very foundation of a case." *Monica C.*, 211 Ariz. at 94 ¶¶ 23, 25. Moreover, to prove prejudice, Brenda "must show that a reasonable [fact-finder] could have reached a different result." *State v. Dickinson*, 233 Ariz. 527, 531 ¶ 13 (App. 2013) (internal quotation marks omitted) (quoting *State v. James*, 231 Ariz. 490, 494 ¶ 15 (App. 2013)). Importantly, however, Brenda "must affirmatively prove prejudice" and cannot merely "rely upon speculation." *Id.* (internal quotation marks omitted) (quoting *State v. Munninger*, 213 Ariz. 393, 397 ¶ 1004 (App. 2006)).

¶39        Even if we assume that the juvenile court's errors and resulting deprivation of Brenda's due process rights go to the foundation of the State's case or Brenda's defense, Brenda made absolutely no showing of prejudice in the juvenile court or on appellate review. For example, Brenda has not established that any of the evidence presented at the termination hearing was inadmissible, that the evidence was insufficient to establish the grounds for severance or the juvenile court's finding of Z.D.'s best interests, or that she would have presented particular testimony or other additional evidence to challenge the State's evidence. Because Brenda "presented no evidence that a reasonable [judge] would have concluded differently than did the [juvenile court] judge" in this case, she has not met her burden under fundamental error review. *Monica C.*, 211 Ariz. at 95 ¶ 26. The court of appeals erred in concluding that the juvenile court's denial of Brenda's right to testify was fundamental, prejudicial error and that the restrictions placed on Brenda's counsel deprived her of a fair trial. *Brenda D.*, 242 Ariz. at 157 ¶ 20, 157–58 ¶ 26. Accordingly, we affirm the juvenile court's order terminating Brenda's parental rights to Z.D.

**III.**

¶40 For future guidance, we emphasize that when a parent fails to appear at a termination adjudication hearing, the juvenile court has discretionary authority to find waiver of the parent's legal rights and to proceed with the hearing. § 8-863(C). Before commencing the hearing in a parent's absence, however, the court must find that the procedural prerequisites of § 8-863(C) and Rule 66(D)(2) have been met, and that the parent waived his or her legal rights by failing to appear. The consequences of a parent's failure to appear are discussed above and identified in both the statute and rule. If a parent never appears at the hearing, then when the evidence is closed the juvenile court should confirm the absent parent's waiver of rights and determine whether the state presented sufficient evidence to support an alleged ground for termination and a best-interests finding.

¶41 If, however, the parent does appear late but during the hearing, the juvenile court should immediately halt the proceedings to determine whether the parent can show "good cause" for his or her late arrival under Rule 66(D)(2). *Cf. Christy A.*, 217 Ariz. at 304–05 ¶ 16 (discussing and finding "instructive" in termination context what is required to show "good cause" for setting aside entry or judgment of default). If the parent establishes, and the juvenile court finds, good cause, the court should either reopen the evidence or continue the hearing (unless the parent waives that right).

¶42 On the other hand, when a parent appears after the hearing has started and fails to show good cause for his or her late arrival, the juvenile court's earlier finding of waiver still applies to the proceedings up to the point at which the parent appeared. In that scenario, testimony and other evidence admitted before the parent's late arrival need not be repeated. But, absent extraordinary circumstances, the court should permit the tardy parent to testify and present other available evidence if the parent so chooses. *Cf. id.* at 307 ¶¶ 22–24 (recognizing that a parent has a due process right "to be present and to participate" in a termination hearing). This framework alleviates Brenda's concerns that "tardy parents stand to lose nearly all of their rights within minutes or even seconds of severance proceedings beginning," and "properly balances the parent's fundamental due process rights with the competing interests."

**IV.**

¶43 For the reasons stated above, we affirm the juvenile court's severance order and vacate the court of appeals' opinion.

JUSTICE TIMMER, with whom JUSTICE BOLICK joins, dissenting in part and concurring in part:

¶44        The Majority decides that a parent who arrives late to the hearing "does not appear at the hearing" as contemplated by § 8-863(C) and Rule 66(D)(2). *See supra* ¶ 19. The correct interpretation, in my view, and the one that best preserves a parent's constitutional right to parent while maintaining the state's interest in securing permanency for displaced children, is that these authorities apply only when a parent fails to appear at all before the close of evidence in a termination adjudication hearing.

¶45        I begin with the plain language of § 8-863(C) and Rule 66(D)(2). *Cf. State v. Burbey*, 243 Ariz. 145, 147 ¶ 7 (2017) ("To determine a statute's meaning, we look first to its text . . . [and] [w]hen the text is clear and unambiguous, we apply the plain meaning and our inquiry ends."); *State v. Salazar-Mercado*, 234 Ariz. 590, 592 ¶ 4 (2014) ("We interpret court rules to effect the rule-makers' intent, using the same principles we apply when interpreting statutes."). Both provisions authorize the juvenile court to find a waiver of legal rights and an admission of allegations if the parent does not appear at the termination adjudication hearing. *See* A.R.S. § 8-863(C) ("If a parent does not appear at the hearing . . . ."); Ariz. R.P. Juv. Ct. 66(D)(2) ("If the court finds the parent . . . failed to appear . . . ."). There is nothing equivocal about this language. Logically, and indisputably, when a parent attends a hearing, even when late, he or she has "appeared." *Cf.* Black's Law Dictionary (10th ed. 2014) (defining "appear" in part as "coming into court as a party or interested person").

¶46        Even if the meaning of "does not appear" and "failed to appear" is unclear, as the Majority suggests, secondary interpretative principles support my reading. Neither § 8-863(C) nor Rule 66(D)(2) addresses a parent's untimely appearance at the termination adjudication hearing. I agree with the court of appeals that "[i]f the legislature intended to prescribe sanctions for the failure to *timely* appear, it would have included the word 'timely,' as it has done in various other sections of Title 8." *Brenda D.*, 242 Ariz. at 155–56 ¶ 15; *id.* ¶ 16 ("[N]owhere does [Rule 66(D)(2)] discuss a 'timely appearance' of a parent."); *see also State v. Diaz*, 224 Ariz. 322, 324 ¶ 10 (2010) (stating that "related statutes in the statutory scheme. . . may shed light on the proper interpretation of the statutes in question . . . .").

¶47        My reading of the statute and rule would also "avoid serious constitutional issues." *Bus. Realty of Ariz., Inc.*, 181 Ariz. at 559. Parents have a fundamental liberty interest in the care, custody, and management of their children that is protected by the Due Process Clause. *See Santosky*, 455 U.S. at 753, 758–59 ("[P]arents retain a vital interest in preventing the irretrievable destruction of their family life."); *see also Kent K. v. Bobby M.*, 210 Ariz. 279, 284 ¶ 24 (2005). Thus, when the state seeks to terminate that interest, it

must provide fundamentally fair procedures. *See Santosky*, 455 U.S. at 753–54 ("If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs.").

**¶48** Applying the three factors specified in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) to determine what process is due, i.e., the private interests affected by the proceeding, the risk of error created by the state's procedure, and the countervailing governmental interest supporting that procedure, I conclude that § 8-863(C) and Rule 66(D)(2) would violate a parent's due process rights if their sanctions are applied to a tardy parent. *Cf. Santosky*, 455 U.S. at 754 (balancing *Mathews* factors to determine the nature of the process due in parental rights termination proceedings). Simply put, it is unfair not to notify a parent in advance that if she arrives even minutes late for a termination adjudication hearing without good cause, and despite the presence of an attorney representing her interests, the juvenile court could find she waived all legal rights and is deemed to have admitted the allegations supporting termination of her parental rights. And imposing these sanctions at the commencement of the hearing unacceptably dilutes the state's burden of proof because the parent is robbed of the ability to test the state's evidence. *Cf. id.* at 747–48 ("Before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence."). Interpreting the statute and rule as operating at the close of evidence if a parent has failed to appear avoids this result.

**¶49** The Majority acknowledges the due process implications of reading the statute and rule as permitting the juvenile court to make the waiver and admission finding at the commencement of the hearing. *See supra* ¶ 30. To avoid a violation, the Majority creates a limited and revocable waiver of legal rights and directs that the admission of allegations must occur only if the parent fails to attend any part of the hearing. *See supra* ¶¶ 30–31, 40–42. But the language used in § 8-863(C) does not support this framework, a shortfall the Majority fails to explain.

**¶50** Whenever a parent "does not appear" at the hearing, § 8-863(C) authorizes the juvenile court to find that "the parent has waived the parent's legal rights" and is immediately deemed to have admitted the petition allegations. Under the statute's plain language, this authority is categorical. If this authority can only be exercised at the commencement of the hearing, as the Majority holds, the parent would waive all legal rights, which would include the right to an attorney and for that attorney to cross-examine witnesses and present evidence, and the petition's legal and factual allegations would be deemed admitted. If the authority can only be exercised at the close of evidence, as I conclude, the parent would waive all legal rights from that point forward

and the petition's allegations would be deemed admitted, which would restrict the parent's ability to challenge the sufficiency of the evidence on appeal. But nothing supports the Majority's hybrid view that the legal rights waived at the start of the hearing under § 8-863(C) and Rule 66(D)(2) are only those attendant to the parent's presence, that the waiver is revoked if the parent arrives after the hearing commences, or that the court can apply the waiver and admission sanctions at different times. Indeed, the admission of allegations is explicitly triggered "by the failure to appear," which according to the Majority occurs, if at all, at the commencement of the hearing. *See* A.R.S. § 8-863(C). Although the Court should construe an ambiguous statute to avoid unconstitutionality, as the Majority purports to do here, it should not rewrite the statute to do so. *Cf. State ex rel. Polk v. Campbell*, 239 Ariz. 405, 408 ¶ 12 (2016) ("We decline to effectively, if not actually, rewrite [a statute], as that is the legislature's prerogative, not ours."); *Lewis v. Debord*, 238 Ariz. 28, 31 ¶ 11 (2015) ("It is not the function of the courts to rewrite statutes . . . .").

**¶51** The Majority's interpretation of § 8-863(C) and Rule 66(D)(2) is colored by its view that the juvenile court must make a discretionary finding of waiver under these provisions at the start of the termination adjudication hearing to permit the hearing to proceed. *See supra* ¶ 23. I disagree, because Rule 64(C) provides a stand-alone basis for doing so.

**¶52** Rule 64(C) implicitly authorizes the juvenile court to proceed in the parent's absence if the parent is notified in advance of the termination adjudication hearing that the hearing may "go forward" in her "absence" and "result in the termination of parental rights based upon the record and evidence presented." Because "going forward" may only occur at the commencement of the hearing, a parent is explicitly informed of what may occur if she does not arrive timely. Thus, if the juvenile court finds that the parent was given proper notice under Rule 64(C) and yet failed to appear on time, the court can find a voluntary waiver of the parent's right to participate at the scheduled time and then proceed with the hearing. *Cf. Manuel M.*, 218 Ariz. at 211 ¶ 20 (acknowledging that a parent's nonappearance can constitute a constructive waiver of rights that the parent had been specifically informed could be lost by failing to appear).

**¶53** The Majority asserts that Rule 64(C) "vests the juvenile court with discretion to find that the parent waived legal rights *only after* the court first finds that the parent 'failed to appear.'" *See supra* ¶ 29. But the "go forward" provision in Rule 64(C) stands apart from the "failure to appear" language in the rule, and nothing conditions the court's ability to "go forward" on an exercise of its discretion under § 8-863(C) and Rule 66(D)(2). Just last year we recognized that the "go forward" provision operates independently. *See Marianne N.*, 243 Ariz. at 57–58 ¶ 22 (recognizing that Rule 64(C) "authorizes the juvenile court to 'go forward' with a termination adjudication hearing at

the time scheduled for a pretrial proceeding if the parent fails to attend without good cause" and the court is *then* authorized to "proceed as contemplated by § 8-863(C)" and "find that a parent has waived her legal rights by failing to appear at the termination adjudication hearing"). Procedural rules authorizing a court to proceed in the absence of a party given notice of the proceeding are not unique. *See* Ariz. R. Crim. P. 9.1 (authorizing the court to "go forward in the defendant's absence" if he was given "notice of the date and time of the proceeding, notice of the right to be present, and notice that the proceeding would go forward" in his absence).

¶54        Interpreting § 8-863(C) and Rule 66(D)(2) to mean that an untimely appearance during a termination adjudication hearing is a failure to appear under these authorities, with grave consequences flowing from that determination, is both unsupported by the language of these provisions and constitutionally troubling. Here, Brenda appeared late to the termination adjudication hearing and therefore waived her right to personally participate in the proceedings held before her untimely appearance because she had been informed that the hearing would go forward in her absence. But she did not fail to appear as contemplated by § 8-863(C) and Rule 66(D)(2). Although the juvenile court erred by finding a waiver of Brenda's legal rights and an admission of the termination allegations at the commencement of the hearing, Brenda has not shown fundamental error. Thus, although I disagree with the Majority's interpretation of § 8-863(C) and Rule 66(D)(2), I too would affirm the termination order.