IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

---

TRISHA A., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, L.A., L.A., *Appellees*.

No. 1 CA-JV 17-0126
FILED 6-14-2018

---

Appeal from the Superior Court in Maricopa County
No. JD529230
The Honorable Arthur T. Anderson, Judge

**VACATED AND REMANDED**

---

COUNSEL

David W. Bell Attorney at Law, Higley
By David W. Bell
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee Department of Child Safety*

---

## OPINION

Presiding Judge Lawrence F. Winthrop delivered the opinion of the Court, in which Judge Diane M. Johnsen and Judge Maria Elena Cruz joined.

---

**W I N T H R O P**, Presiding Judge:

**¶1**          Trisha A. ("Mother") appeals the juvenile court's order severing her parental rights to her two children ("the children").  Mother argues the court violated her due process rights by finding she did not have good cause for failing to appear at a pretrial hearing and, on an accelerated basis, severing her rights *in absentia*.  In this opinion, we clarify the standard to apply when a parent moves to set aside a severance order entered after a case has been accelerated to a final adjudication as a result of a missed initial hearing, pretrial conference, or status conference pursuant to Arizona Rule of Procedure for the Juvenile Court 64(C).[1]  In doing so, we also clarify the application of *Christy A. v. Ariz. Dep't of Econ. Sec.*, 217 Ariz. 299 (App. 2007), and hold that the parent's burden of demonstrating good cause in this setting does not include providing evidence of a meritorious defense.  As more fully discussed below, minimal due process safeguards and fundamental fairness require that we vacate the severance order here and remand this case for further proceedings consistent with this decision.

### FACTS AND PROCEDURAL HISTORY

**¶2**          On September 9, 2015, Mother was admitted to Banner Behavioral Health for substance abuse treatment for heroin and methamphetamine use.  Mother did not complete the hospital's substance abuse treatment and left against medical advice.  On September 11, 2015, the Department of Child Safety ("DCS") took temporary custody of the children and placed them with their maternal grandmother.  Thereafter, DCS filed a petition alleging the children were dependent as to Mother due to substance abuse and/or neglect.  Mother contested the dependency, but the juvenile court found the children dependent as to her.

---

[1]      Our holding also applies to accelerated severance of parental rights pursuant to Rule 65.

**¶3**        On August 3, 2016, DCS filed a petition to sever Mother's parental rights based on abandonment, substance abuse, and out-of-home placement for a cumulative total period of nine months or longer. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(1), (3), (8)(a) (Supp. 2017).[2]  As a part of the severance proceedings, Mother received, and signed, a "Notice to Parent in Termination Action" ("Form 3").  Form 3 advised Mother that if she failed to attend any severance-related hearing without good cause, the court may find that she waived her legal rights and admitted the alleged grounds for severance.

**¶4**        Mother attended the initial severance hearing, set pursuant to Rule 65,[3] and the initial mediation.  The juvenile court excused Mother from the next pretrial hearing on September 22, 2016.  At that pretrial hearing, the court set a combined report and review status hearing and pretrial conference for January 18, 2017 ("January Hearing").[4]  The court also set the severance adjudication hearing for March 28 and March 30, 2017.  Mother did not appear at the January Hearing.  Mother's attorney informed the court that he had told Mother about the January Hearing, but that he had

---

[2]        We cite the current versions of all applicable statutes as no revisions material to this decision have occurred.

[3]        The purpose of a Rule 65 initial hearing is for the court to "determine whether service has been completed and whether the parent . . . admits, denies or does not contest the allegations contained in the motion or petition for termination of parental rights."  Ariz. R.P. Juv. Ct. 65(A).

[4]        During a dependency, the juvenile court is required to hold a report and review hearing "at least once every six months to inquire about the status of the children and the compliance of the parents with services."  *See Dependency Hearing Descriptions*, Maricopa Cty. AZ, https://www.maricopa.gov/814/Dependency-Hearing-Descriptions.  *See also* A.R.S. § 8-847(A), (E) (2018) (providing a "court shall hold periodic review hearings at least once every six months" to consider, among other factors, the health and safety of the child).  There is no provision in the panoply of rules governing severance proceedings that specifically provides for a pretrial conference.  Rule 54, however, found in the group of rules applying to dependency proceedings, provides the purpose of a pretrial conference is "to determine whether the parties are prepared and intend to proceed to trial or whether resolution of remaining issues in a non-adversarial manner is possible and to address any issues raised by the parties.  Counsel shall meet with their clients prior to the conference."

not heard from her. The court found that Mother did not have good cause for failing to appear. At the request of DCS, the court then converted the report and review hearing/pretrial conference into an accelerated severance hearing, and heard evidence from DCS in support of its severance petition.

¶5 The DCS case manager testified that Mother had only sporadic contact with the children during the 16-month dependency and that Mother had not provided the children with reasonable support because she had not sent the children any gifts, birthday cards, or letters. Through the case manager's testimony, DCS additionally contended that Mother was unable to maintain a normal parental relationship with the children because, in addition to failing to provide parental contact or guidance, she failed to provide the children with basic necessities such as food and shelter. Moreover, the case manager opined that Mother was unable to care for the children because of her history of substance abuse, inability to demonstrate sobriety, and failure to successfully participate in substance abuse treatment. At the end of a hearing that lasted twenty-five minutes,[5] the juvenile court found DCS established by clear and convincing evidence all

---

[5] The transcript of the entire hearing is 28 pages; however, the testimony presented is only 12 pages. Mother's attorney's entire cross examination of DCS' case manager consisted of the following:

Q. When was the last time you had direct contact with my client?
A. It would have been at the mediation.
Q. So about prior to the last court hearing?
A. Yeah.
Q. Okay. And you were aware that she had left word that she was attending a hearing in Gilbert [at] the last court hearing here, correct?
A. I believe she was actually here . . . at that hearing.
Q. If that's what you recall.
A. Yeah.
Q. You understand though that she has an active criminal case?
A. Yes.
Q. All right. And you don't know at this point whether she's incarcerated or not, correct?
A. No. Not [to] my knowledge, no.
Q. Okay. Nothing further.

three grounds for severance. The court also found by a preponderance of the evidence that severance was in the children's best interests.[6]

¶6 Nine days after the January Hearing, Mother moved to set aside the severance ruling, arguing she had been physically unable to appear. In support of her motion, Mother argued the maternal grandparents, who were present at the hearing, knew but failed to inform the juvenile court that she was in an in-patient drug treatment facility ("Lifewell") the morning of the hearing. Mother attached to her motion a copy of a "Behavioral Health Service Plan" form from Lifewell dated January 18, 2017, identifying her as a patient admitted to the facility. The court granted Mother's motion before DCS had an opportunity to respond, finding Mother was "physically unable to appear in Court [] for the Report and Review Hearing/Pretrial Conference set to January 18, 2017."

¶7 DCS filed an opposition to Mother's motion and moved the juvenile court to reconsider the order setting aside the severance ruling. DCS argued that Mother failed to establish good cause for her failure to appear at the January Hearing and requested a status conference to resolve the pending motions. In her response to the DCS motion, Mother agreed to the status conference "to discuss rescheduling the Severance Trial," but maintained that the court properly granted her motion to set aside because she was physically unable to appear at the January Hearing.[7]

¶8 The juvenile court set a status conference for February 23, 2017 ("February Hearing") to determine whether to "set aside the set-aside." Mother did not appear. At the hearing, DCS argued that documents Mother submitted with her motion showed she was admitted to Lifewell at 12:00 p.m. on January 18, more than two hours after the scheduled start of the January Hearing. From that, DCS argued Mother's admission to Lifewell did not prevent her from appearing at the hearing. DCS further argued that the court should affirm the severance because Mother did not

---

[6] The juvenile court also severed the parental rights of the children's biological father ("Father") *in absentia*. Father is not contesting the severance, and is not a party to this appeal.

[7] In her motion to set aside and her response to DCS' motion to reconsider, Mother did not discuss the merits of the underlying severance action nor identify the evidence she proposed to offer at the severance hearing.

notify either DCS or her attorney that she was going to Lifewell. In Mother's defense, her attorney argued that the Lifewell paperwork did not show what time Mother arrived at the facility, but did show she was in Lifewell on January 18, 2017, the date of the January Hearing.[8]

¶9         DCS also argued that, even if the juvenile court found good cause for Mother's absence from the January Hearing, there was no good cause for Mother's absence from the February Hearing. The court, however, stated it was "not too concerned about [Mother's] non-appearance" at the informally set February Hearing. Ultimately, the court reinstated the severance ruling it had made at the conclusion of the January Hearing. The court based its decision on the "additional information about the circumstances surrounding Mother's non-appearance" and because Mother had been in "contact [via e-mail] with her lawyer, [and] could have told" her lawyer about her treatment.

¶10         Mother timely appealed. At DCS' request, we stayed the appeal pending the Arizona Supreme Court's decision in *Brenda D. v. Dep't of Child Safety*, 243 Ariz. 437 (2018). Following issuance of the Supreme Court's decision in that case, we directed Mother and DCS to file supplemental briefs. We have jurisdiction over the appeal pursuant to the Arizona Constitution, Article 6, Section 9; A.R.S. § 8-235(A) (2014); and Rule 103(A) of the Arizona Rules of Procedure for the Juvenile Court.

## ANALYSIS

¶11         On appeal, Mother argues the juvenile court violated her due process rights by setting aside its good cause finding. Mother additionally argues that courts should not apply civil procedure standards for setting aside default judgments to juvenile court proceedings because that standard does not protect a parent's constitutional interests in a severance proceeding. In response, DCS argues that in deciding whether to set aside a severance order entered *in absentia*, the juvenile court should apply a default judgment standard taken from civil procedure—requiring good cause, as demonstrated by proof of mistake, inadvertence, surprise, or excusable neglect *and* a meritorious defense. *See*, *e.g.*, *Richas v. Superior Court*, 133 Ariz. 512, 514 (1982).

---

8         The court asked whether Lifewell accepted walk-ins or appointments, but neither counsel could answer the question.

*I.      Introduction*

**¶12**          Severance cases by their very nature are dependent on the unique factual circumstances of each case, but all of them implicate a parent's constitutional right to parent her children. *See Minh T. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 76, 79, ¶ 14 (App. 2001). This fundamental right does not disappear because a parent has not been a model parent or has temporarily lost custody of the children. *Michael M. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 198, 200, ¶ 8 (App. 2002) (quoting *Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 4 (1990) (citation omitted)). Nor does a parent's fundamental right to raise her children disappear because the children "might be better off in another environment." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 194, ¶ 43 (App. 1999) (quoting *Maricopa Cty. Juv. Action No. JS-6520*, 157 Ariz. 238, 244 (App. 1988)). Although the right to parent one's children is not absolute, justice requires that a parent receive due process and fundamentally fair procedures before this right is severed. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24 (2005) (citing *Santosky v. Kramer*, 455 U.S. 745, 754 (1982)).

**¶13**          Pursuant to Rule 66(D)(2) or Rule 64(C), juvenile courts have discretion to determine whether and to what extent a parent has waived her legal rights when she has failed to appear at a hearing and whether and when to proceed to a final adjudication hearing. Rule 66(D)(2) permits a juvenile court to sever a parent's rights *in absentia* at a scheduled *final adjudication hearing* if the court finds that the parent does not have good cause for her absence, the parent was properly served pursuant to Rule 64, and the parent was previously advised of the potential consequences of her failure to appear. Rule 64(C) permits a juvenile court that finds a parent has missed *an initial hearing, pretrial conference, or status conference* to convert that preliminary proceeding into an accelerated final adjudication hearing, and to sever a parent's rights based on the record created at the accelerated severance hearing.[9]

**¶14**          Not all juvenile court judges follow the same Rule 64(C) procedure when a parent misses a scheduled pre-adjudication hearing; some judges routinely accelerate the final severance hearing, while others do not. Although the waiver language of Rule 64(C) is similar to that of

---

[9]      Rule 65(C)(6)(c) also allows a juvenile court to hold an accelerated severance adjudication and sever a parent's rights *in absentia* if the court finds that the parent did not have good cause for her failure to appear at an initial severance hearing, had received notice of the hearing, and had been warned that the court may sever her rights if she failed to appear.

Rule 66(D)(2), the procedures and rights at stake in these rules are distinctly different.  Indeed, this case highlights the opposing interests at stake in a severance hearing and the difficulty of applying a uniform procedure to balance a parent's fundamental right to parent her children with the State's interest in efficiently providing the children with permanency, stability, and safety in both the Rule 66(D)(2) and Rule 64(C) contexts.  As such, we examine these provisions in detail.

> *II.    Rule 66(D)(2)*

**¶15**        Rule 66(D)(2) provides:

> If the court finds the parent, guardian or Indian custodian failed to appear at the **termination adjudication hearing without good cause shown, had notice of the hearing, was properly served pursuant to Rule 64 and had been previously admonished regarding the consequences of failure to appear, including a warning that the hearing could go forward in the absence of the parent, guardian or Indian custodian and that failure to appear may constitute a waiver of rights, and an admission to the allegation contained in the motion or petition for termination**, the court may terminate parental rights based upon the record and evidence presented if the moving party or petitioner has proven grounds upon which to terminate parental rights.

(Emphasis added.)

**¶16**        Rule 66(D)(2) applies only if a parent misses a final scheduled severance adjudication hearing.  If a parent fails to appear at a scheduled final adjudication hearing and the juvenile court finds the parent did not have good cause for failing to appear, then the court, in its discretion, may proceed with the hearing and, assuming requisite proof by the State, enter a severance order *in absentia*.  *See Christy A.*, 217 Ariz. at 303-04, ¶ 13 (reviewing a "default" severance order pursuant to Rule 66(D)(2) after mother failed to appear at the final severance hearing); *Brenda D.*, 243 Ariz. at 448, ¶ 40 (holding a court, in its discretion, may "find waiver of the parent's legal rights" pursuant to Rule 66(D)(2) and sever a parent's rights *in absentia* if a parent fails to timely appear at a final adjudication hearing without good cause).

**¶17**        The juvenile court also has discretion in deciding whether to set aside a severance entered *in absentia* after an adjudication hearing because a parent had "good cause" for her failure to appear.  We have held

in the Rule 66(D)(2) context that to establish good cause a parent must prove both "(1) mistake, inadvertence, surprise or excusable neglect" and "(2) a meritorious defense." *Christy A.*, 217 Ariz. at 304, ¶ 16 (citing *Richas*, 133 Ariz. at 514). A parent contesting a severance order need not show that she will prevail but must show "a good faith basis upon which to contend that the petitioner cannot prove a statutory basis for termination and/or that termination is not in the best interests of the child[ren]." *Id.* at ¶ 15 n.11.

**¶18** In *Christy A.* we attempted to balance a parent's interest and the State's interest at a scheduled final severance hearing by drawing from the civil procedure default-judgment rules for the concept of and standards for setting aside a severance order entered after a failure to appear. 217 Ariz. at 304, ¶ 16. *See also Brenda D.*, 243 Ariz. at 448, ¶ 41 (finding instructive *Christy A.*'s "good cause" standard "for setting aside entry or judgment of default"). But subsequent decisions have implicitly extended the standard articulated in *Christy A.* to defaults entered pursuant to Rule 64(C), after a parent's failure to appear at a routine pretrial proceeding. Closely examined, *Christy A.*'s progeny demonstrates that applying such a standard does not provide a workable framework to balance the parent's and State's rights when the court converts a routine status conference or preliminary proceeding into an accelerated final severance hearing *in absentia*.[10]

---

[10] No published case directly criticizes/disapproves *Christy A.*'s default judgment standard; however, numerous unpublished decisions where the juvenile court severed a parent's rights after the parent's failure to appear at a preliminary hearing demonstrate confusion in the interpretation and application of *Christy A. See Michaela M. v. Ariz. Dep't of Econ. Sec.*, 2 CA-JV 07-0035, 2008 WL 4648843, at *5, ¶ 18 (Ariz. App. Feb. 22, 2008) (mem. decision) (noting both the moving party and the juvenile court believed "meritorious defense" referred to the reason the parent failed to appear at the hearing, and not the underlying severance action); *Martha C. v. Dep't of Child Safety*, 1 CA-JV 16-0426, 2017 WL 1505913, at *3, ¶ 13 (Ariz. App. Apr. 27, 2017) (mem. decision) (finding mother failed to establish a meritorious defense when she argued "DCS failed to make reasonable efforts to provide appropriate reunification services because it did not offer her services in Maricopa County"); *Manuel T. v. Dep't of Child Safety*, 1 CA-JV 14-0036, 2014 WL 4103935, at *3, ¶ 12 (Ariz. App. Aug. 19, 2014) (mem. decision) (finding even if father had good cause for his nonappearance, there was "no meritorious defense that could have been advanced that would have defeated DCS' claim of abandonment").

*III.     Rule 64(C)*

¶19        Rule 64(C) provides:

A notice of hearing shall accompany the motion or petition for termination of parental rights and shall advise the parent, guardian or Indian custodian of the location, date and time of the initial termination hearing.  In addition to the information required by law, the notice of hearing shall advise the parent, guardian or Indian custodian that **failure to appear at the initial hearing, pretrial conference, status conference or termination adjudication hearing, without good cause, may result in a finding that the parent, guardian or Indian custodian has waived legal rights, and is deemed to have admitted the allegations in the motion or petition for termination**.  The notice shall advise the parent, guardian or Indian custodian that **the hearings may go forward in the absence of the parent, guardian or Indian custodian and may result in the termination of parental rights based upon the record and evidence presented**.

(Emphasis added.)

¶20        Thus, under this rule, if a parent fails to appear at a pretrial hearing in a severance-related proceeding, the juvenile court may find a waiver of legal rights and may accelerate the final adjudication hearing and, upon the requisite proof, sever a parent's rights *in absentia*.  *See Adrian E. v. Ariz. Dep't of Econ. Sec.*, 215 Ariz. 96, 99, ¶ 9 (App. 2007) ("The plain language of this rule [Rule 64(C)] undeniably suggests parental rights may be terminated by default at any of the four types of hearings named in the rule, including status conferences.").  Although many parents have argued that Rule 64(C) violates their due process rights, no Arizona appellate court has directly addressed this issue.  *See Marianne N. v. Dep't of Child Safety*, 243 Ariz. 53, 55-56, ¶ 12 (2017) (declining to address whether the juvenile court abused its discretion by severing a mother's parental rights *in absentia* or whether the court denied the mother due process and her fundamental right to parent her children).  *See also Brenda D.*, 243 Ariz. at 440 (not addressing the constitutionality of accelerating a severance hearing, after a

parent fails to appear at a pretrial hearing, and ordering severance *in absentia*).[11]

**¶21**        Even if a juvenile court finds a parent has waived her legal rights under Rule 64(C) and proceeds with an accelerated severance hearing, DCS still maintains the same burden of proof. *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000) (finding DCS must prove a statutory ground for severance by clear and convincing evidence and that severance is in a child's best interest by a preponderance of the evidence). In practice, however, when the juvenile court proceeds to an adjudication after a parent's failure to appear, the resulting hearing may not be a fact-intensive proceeding. Typically, a DCS supervisor or caseworker briefly summarizes the case history, the success or failure of services offered to the parent, and opines about the parent's fitness and parenting skills. The DCS witness also opines about whether severance is in the children's best interest. At the same time, *a fortiori*, the parent's attorney has no client-witness to call to testify and, indeed, is usually surprised by the client's failure to appear (particularly when the parent has cooperated and appeared in the past). While the attorney can theoretically present a case to rebut DCS' evidence, the reality is that, as here, the parent's attorney is often ill prepared to address the merits at such an accelerated hearing. It is no wonder that, when the juvenile court exercises its discretion to accelerate a final hearing under Rule 64(C), the result is sometimes generically referred to as a "drive-by" hearing. *See Dependency Hearing Descriptions*, Maricopa Cty. AZ, https://www.maricopa.gov/814/Dependency-Hearing-Descriptions.

      IV.    *Good Cause in Rule 64(C) Cases*

**¶22**        Like Rule 66(D)(2), Rule 64(C) does not define good cause; however, we expressly decline to extend to initial severance hearings, pretrial conferences, and status conferences the holding of *Christy A.* that a parent moving to set aside a severance ordered after an accelerated hearing must present evidence of a meritorious defense.

**¶23**        Although we generally disfavor default judgments, we recognize that juvenile courts are granted wide discretion in issuing orders. *See Sloan v. Florida-Vanderbilt Dev. Corp.*, 22 Ariz. App. 572, 574 (1974).

---

11      The parent in *Brenda D.* failed to appear at the final scheduled adjudication hearing. 243 Ariz. at 441, ¶ 8. Accordingly, the court severed her parental rights pursuant to Rule 66(D)(2) not Rule 64(C).

Juvenile courts nevertheless must conduct proceedings which are fundamentally fair and comport with a parent's due process rights. *See Kent K.*, 210 Ariz. at 284, ¶ 24. To determine whether a proceeding affords a parent sufficient due process, we balance the parent's interest at stake, the risk the current proceeding will lead to an erroneous decision, and the State's interest at stake. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See also Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 24 (1981) (finding the key to whether a severance hearing comports with a parent's due process rights is whether the severance procedures are fundamentally fair).[12]

¶24        As previously recognized, a parent has an interest in the "companionship, care, custody and management of his or her children." *Lassiter*, 452 U.S. at 27 (quoting *Stanley v. Illinois*, 405 U.S. 645, 651 (1972)). The State, however, has a legitimate interest in the welfare of the children. *Id.* Moreover, both the parent and the State share an interest in a juvenile court's correct and just resolution of a severance proceeding. *Id.* at 27-28. Given these interests, a juvenile court should assign more weight to the State's interests only if the State has a "powerful countervailing interest[]" to that of a parent. *Id.* at 27 (quoting *Stanley*, 405 U.S. at 651).

¶25        In *Lassiter*, the United States Supreme Court utilized a sliding scale approach to determine the extent of a parent's due process rights—weighing the relative strength of a parent's interests against the State's interests and the risk of an erroneous outcome—before concluding that the State did not violate a parent's due process rights by failing to provide a parent with counsel at a severance hearing. *Id.* at 31. The court, however, found that had the interests at stake been different, the sliding scale approach would have compelled a different outcome. *Id.* ("If, in a given case, the parent's interests were at their strongest, the State's interests were at their weakest, and the risks of error were at their peak, it could not be said that the *Eldridge* factors did not overcome the presumption against the right to appointed counsel, and that due process did not therefore require the appointment of counsel."). *See also Roe v. Wade*, 410 U.S. 113, 162-63 (1973) (applying a similar sliding scale approach to determine that a

---

[12]        Although we have not, to date, formally adopted a sliding scale approach to balance a parent's interest in parenting her children with the State's interest in providing children with safety, stability, and permanency, using a sliding scale approach in this setting is not a new concept. *Cf.* Margaret Ryznar, *A Curious Parental Right*, 71 SMU L. Rev. 127, 131-32 (2018) (noting courts have grappled with applying a consistent standard of review for parental rights cases and suggesting the application of a sliding scale approach).

pregnant woman's right to end her pregnancy outweighed a state's interest in protecting the health and welfare of its citizens until a "compelling point," when the state's interests became predominant).

¶26        How to balance a parent's fundamental right to the care and custody of her children against the State's equally important interest in protecting children from harm and providing them with stability and permanency in a Rule 64(C) accelerated final severance hearing turns on the second factor of the *Matthews v. Eldridge* inquiry — the risk that the current procedures will lead to an erroneous deprivation of a party's right. In some cases, a Rule 64(C) accelerated hearing may too often become a proceeding where efficiency can outweigh sufficiency of evidence, and convenience can outweigh nuance. At the time of such a preliminary proceeding, often months before the scheduled severance hearing, it is difficult to imagine what meaningful evidence a parent could offer in order to prove a meritorious defense. Moreover, while cost and efficiency are surely factors to consider when balancing a parent's interest versus the State's interest, they are not the primary nor the only important factors. *See, e.g., Marianne N.*, 243 Ariz. at 60, ¶ 36 (Eckerstrom, J., dissenting) ("[A] parent's failure to attend a pretrial conference risks no delay in the scheduled termination hearing or the child's permanency.").

¶27        At Rule 64(C) accelerated severance hearings, as noted above, a parent's attorney is often left scrambling to adequately counter the State's summary presentation of evidence and to present the parent's defense. Additionally, when a court severs a parent's rights at an accelerated adjudication hearing pursuant to Rule 64(C), it deprives a parent of the time over which the parent can hope to demonstrate that she is successfully complying with DCS' provided services and working in good faith to resolve the issues that led DCS to take the children into custody in the first place.[13]  In such setting, a parent suffers a great risk that she will be prematurely, erroneously, and permanently deprived of her right to parent her children. Moreover, at a preliminary or status hearing, a parent's

---

[13]      Some pretrial conferences, such as in this case, may occur within two months after DCS files its severance petition. If the parent were to fail to appear at the first pretrial conference, and the court were to proceed with an accelerated adjudication hearing, the parent may only be able to rebut DCS' allegations for severance with proof of two months of services. In many cases a parent will not, for a variety of reasons, some of which are outside the parent's control, even begin to receive services until a few months into the severance and/or dependency proceedings.

interest in the care and custody of her children, and the risk that an accelerated proceeding might forever alter her fundamental right to parent her children, is at its highest. In contrast, the State's interest in safety, permanency, and stability is certainly lower, because generally the State already has custody of the children, and the date of the final severance hearing is already set. The issue here is not whether the State will ultimately prevail on the merits, but rather ensuring that, whatever the ultimate ruling, the outcome is a result of a fundamentally fair proceeding that does not compromise a parent's due process rights. Accordingly, because at this stage of the severance proceedings (at an initial hearing, pretrial conference, or status conference), the court must afford a parent greater procedural protection than at a hearing held pursuant to Rule 66, we hold the court may not require a parent to prove a meritorious defense to set aside a severance order arising out of a Rule 64(C) (or Rule 65) accelerated hearing.

¶28 DCS cites *Christy A.*, in arguing a parent must provide both a reason for her failure to appear *and* present a meritorious defense to set aside an order entered pursuant to Rule 64(C). 217 Ariz. at 304, ¶ 16. Applying the meritorious defense prong of *Christy A.* to justify denial of a parent's motion to set aside a severance order accelerated by Rule 64(C) or Rule 65 infringes a parent's right to a fundamentally fair proceeding. Additionally, because on the sliding scale a parent's interest outweighs the State's interest at a preliminary hearing or status conference, requiring a parent to provide a "meritorious defense," as articulated in *Christy A.* and some of its progeny, is unnecessarily burdensome and impractical. Instead, to demonstrate good cause in moving to set aside a severance order issued after an accelerated hearing pursuant to Rule 64(C) or Rule 65, a parent need only show evidence of a legitimate reason or excuse for her failure to appear—which the court, in its discretion, may accept or reject.[14]

¶29 The application of this standard in this setting is further supported by the very nature of preliminary hearings and status conferences, where, in general, a party's presence likely does not aid the

---

[14] Our holding that a parent need not show a meritorious defense in all situations once a juvenile court proceeds to an accelerated severance hearing *in absentia* is consistent with *Brenda D.*, 243 Ariz. at 444, ¶ 24 (finding that if a "parent appears late, but before the hearing's conclusion, then the waiver of the parent's legal rights is effective only for the portion of the hearing during which the parent was absent; the waiver ends upon the parent's appearance, even if the parent cannot show good cause for his or her tardy arrival").

court in reaching a determination as to a procedural or evidentiary issue raised by the pending severance proceedings.

**¶30**        If the court accepts the parent's proffered excuse or reason, finding good cause for the failure to appear, there is no waiver of rights. The court will vacate its severance order and the case either proceeds to the already regularly scheduled date for the severance hearing or the court will set an entirely new final adjudication hearing date. If the court instead finds no good cause for the failure to appear at the accelerated hearing, the severance order stands.

**¶31**        As previously noted, the juvenile court's decision to accelerate a preliminary hearing pursuant to Rule 64(C) is discretionary, and should not be a "given," notwithstanding DCS' frequent requests to do so. Without second-guessing the juvenile court, it may be a better practice for the court to rule only that the parent has waived participation at the missed pretrial proceeding, and allow the severance issue to proceed to the final adjudication hearing as scheduled. *See, e.g., Brenda D.*, 243 Ariz. at 448, ¶¶ 41-42 (suggesting that if a parent appears as scheduled at the final severance adjudication there is no permanent waiver due to an earlier failure to appear). Even with a waiver of rights arising out of an unexcused failure to appear at any given pretrial hearing, counsel for the parent will, at a minimum, have an adequate opportunity to be prepared to challenge the proof presented by DCS at the final scheduled severance adjudication hearing relative to the statutory ground(s) for severance and best interests of the children.

### V.      The Juvenile Court's Finding of Good Cause

**¶32**        The procedural history of this case is further muddied because, here, the juvenile court arguably made an appropriate, albeit premature, finding that Mother had a good excuse for failing to appear at the pretrial hearing because she had been admitted for treatment at Lifewell on the hearing date. DCS did not, at any time, controvert the merits of that excuse.[15] Instead, at the February Hearing, DCS misinterpreted the information in the Lifewell documents provided to the court, and argued that Mother did not arrive at Lifewell until 12:00 p.m. when the January Hearing was at 9:30 a.m. The documents Mother provided in support of her motion do not indicate the hour of the day that Lifewell admitted

---

[15]        DCS' written objection to Mother's motion to set aside largely focused on Mother's failure to raise a meritorious defense.

Mother for treatment. The documents do include an e-mail from a Lifewell clinician, sent on January 22 at 12:34 p.m., indicating Mother went to Lifewell on January 18, 2017. At the end of the February Hearing, the court reinstated the severance order based on Mother's failure to notify anyone and the additional information presented regarding Mother's nonappearance.[16] In reinstating the severance order, the court did not make specific findings as to whether its initial finding of good cause was in error.

¶33 These proceedings deprived Mother of a fundamentally fair severance hearing. The record is unclear as to what extent the juvenile court based its decision to reinstate the severance order on DCS' misinterpretation of the record and/or DCS' argument that Mother was required to prove a meritorious defense.

## CONCLUSION

¶34 The juvenile court's order severing Mother's rights to the children is vacated and remanded for further proceedings in accordance with this decision.[17]



AMY M. WOOD • Clerk of the Court
FILED: AA

---

[16] DCS and the guardian ad litem argued Mother could have notified someone that she could not attend the January Hearing or, alternatively, Mother could have gone to Lifewell on another day. While this may be true, it does not necessarily undermine the juvenile court's finding that Mother had good cause for her nonappearance at the hearing due to her physical condition and/or unavailability.

[17] In so doing, we express no opinion as to the merits of whether Mother had good cause for failing to appear at the January Hearing, and if not, how the juvenile court should exercise its discretion in determining whether and to what extent a waiver of legal rights has occurred.