BOLICK, J., dissenting.
 

 ¶33 Twenty-five minutes. That is how quickly the State of Arizona can permanently dissolve a parent's legal relationship with her children. Not only after a full and fair evidentiary hearing intended and designed for that purpose, but, as here, during a routine status conference hastily converted into a final termination proceeding. Such a truncated proceeding and its consequences are intolerable in a free society that values the family relationship and guarantees due process of law. Because our law, properly construed, provides that a parent need only show good cause for her absence from a hearing in order to set aside the judgment in such circumstances, I respectfully dissent.
 

 I.
 

 ¶34 A hallmark of the rule of law is that our courts provide a level playing field for every individual.
 
 See, e.g.
 
 ,
 
 Lassiter v. Dep't of Soc. Servs.
 
 ,
 
 452 U.S. 18
 
 , 28,
 
 101 S.Ct. 2153
 
 ,
 
 68 L.Ed.2d 640
 
 (1981) ("[O]ur adversary system presupposes ... [that] accurate and just results are most likely to be obtained through the equal contest of opposed interests...."). But in Arizona, a parent against whom the state has initiated termination proceedings faces nearly insurmountable obstacles that are largely the result of a draconian statute rendered more oppressive by this Court's rules and decisions. Viewed in isolation, today's decision appears to impose only a modest additional burden on a parent seeking to preserve her rights. But in the aggregate, our termination of parental rights process strays far from essential constitutional requirements.
 

 ¶35 The right of parents to direct and control the upbringing of their children is one of America's foundational constitutional principles.
 
 See, e.g.
 
 ,
 
 Troxel v. Granville
 
 ,
 
 530 U.S. 57
 
 , 65,
 
 120 S.Ct. 2054
 
 ,
 
 147 L.Ed.2d 49
 
 (2000) (plurality opinion) ("[T]he interest of parents in the care, custody, and control of their children ... is perhaps the oldest of the fundamental liberty interests recognized by this Court.");
 
 Wisconsin v. Yoder
 
 ,
 
 406 U.S. 205
 
 , 213-14,
 
 92 S.Ct. 1526
 
 ,
 
 32 L.Ed.2d 15
 
 (1972) ;
 
 Pierce v. Soc'y of Sisters
 
 ,
 
 268 U.S. 510
 
 , 534-35,
 
 45 S.Ct. 571
 
 ,
 
 69 L.Ed. 1070
 
 (1925) ;
 
 Meyer v. Nebraska
 
 ,
 
 262 U.S. 390
 
 , 399-402,
 
 43 S.Ct. 625
 
 ,
 
 67 L.Ed. 1042
 
 (1923).
 

 ¶36 Our state's elected representatives enshrined those rights in statute as well. Section 1-601(A) establishes that "[t]he liberty of parents to direct the upbringing ... of their children is a fundamental right." Section 1-601(B) provides that the state "shall not infringe on these rights without demonstrating that the compelling governmental interest ... is of the highest order, is narrowly tailored and is not otherwise served by a less restrictive means."
 

 ¶37 Those rights are at their apex when the government moves to sever the parental relationship. The United States Supreme
 Court has recognized that "[w]hen the State initiates a parental rights termination proceeding, it seeks not merely to infringe that fundamental liberty interest, but to end it."
 
 Santosky v. Kramer
 
 ,
 
 455 U.S. 745
 
 , 759,
 
 102 S.Ct. 1388
 
 ,
 
 71 L.Ed.2d 599
 
 (1982). Because "[f]ew forms of state action are both so severe and so irreversible,"
 

 id.
 

 , the Constitution demands that when the government seeks to dissolve parental rights, "it must provide the parents with fundamentally fair procedures,"
 

 id.
 

 at 753-54
 
 ,
 
 102 S.Ct. 1388
 
 .
 

 ¶38 Such procedures are especially essential given that, even in the best of circumstances, "[t]he [s]tate's ability to assemble its case almost inevitably dwarfs the parents' ability to mount a defense," in light of the state's resources, expertise, and investigative powers; given the fact that the state's own experts and caseworkers typically comprise the main witnesses; and because the child is in agency custody.
 

 Id.
 

 at 763-64
 
 ,
 
 102 S.Ct. 1388
 
 . Arizona's current termination procedures do not provide adequate due process protections.
 

 ¶39 Sections 8-531 through 8-544 establish procedures for a petition to terminate parental rights. Section 8-537(C) sets forth the consequences for a parent's failure to appear at any of the judicial proceedings involved in the process:
 

 If a parent does not appear at the pretrial conference, status conference or termination adjudication hearing, the court, after determining that the parent has been instructed as provided in § 8-535, may find that the parent has waived the parent's legal rights and is deemed to have admitted the allegations of the petition by the failure to appear. The court may terminate the parent-child relationship as to a parent who does not appear based on the record and evidence presented as provided in rules prescribed by the supreme court.
 

 ¶40 This statute, the constitutionality of which we have never considered, is remarkable in two major respects. First, it implicitly requires the parent to appear not just at the final adjudication hearing where her rights will be determined, and not just at hearings where her presence may be beneficial or necessary, but at
 
 every
 
 court proceeding, no matter how routine, including status conferences. I know of no other area of law, including criminal law, in which parties are required to attend all such proceedings. Second, the consequences of failing to appear at even a minor hearing can be catastrophic: the parent may be deemed to have waived all her rights and admitted the allegations in the severance petition, and it allows the court to sever parental rights well before the scheduled final termination hearing. Again, I cannot think of a single instance elsewhere in the law in which failure to appear at a court hearing can lead to such dire consequences. The fact that the parent has notice that these consequences may occur if she fails to appear at a hearing cannot and does not license such a sweeping deprivation of fundamental rights. Transporting such a regime to the criminal law context would be unthinkable, and it should be equally so here, where the outcome is so drastic a deprivation of liberty.
 

 ¶41 The statutory command that the parent attend every hearing or risk termination of her parental rights is especially untenable given that the individuals involved may lack essential resources such as transportation, may be trying to hold a job, and may be involved in rehabilitation services.
 
 See
 

 Melissa T. v. Dep't of Child Safety
 
 , No. 1 CA-JV 18-0352,
 
 2019 WL 439305
 
 , at *1 ¶¶ 1-4 (Ariz. App. Feb. 5, 2019) (mem. decision);
 
 see also
 

 Lassiter
 
 ,
 
 452 U.S. at 30
 
 ,
 
 101 S.Ct. 2153
 
 . Those circumstances do not lend themselves to ready availability for frequent and routine court hearings. Yet as a majority of this Court has held, a parent can have her rights terminated if she misses even one such hearing out of more than a dozen.
 
 See
 

 Marianne N. v. Dep't of Child Safety
 
 ,
 
 243 Ariz. 53
 
 , 59 ¶ 33,
 
 401 P.3d 1002
 
 , 1008 (2017) (Eckerstrom, J., dissenting) (noting a parent may have her rights "defaulted" under a related statute even after attending fourteen hearings and attempting to call into a pretrial conference). And termination can occur very quickly once the process has commenced.
 
 See
 

 Melissa T.
 
 ,
 
 2019 WL 439305
 
 , at *1 ¶¶ 1-4 (affirming termination of mother's parental rights in an accelerated hearing two months after removal of child from mother's home despite attorney's
 assertion that mother could not attend the hearing because she had relocated and was working).
 

 ¶42 The Court's implementing rule, in turn, provides for notice that a parent's failure to appear at a hearing or conference "without good cause" may result in a finding that the parent "has waived legal rights, and is deemed to have admitted the allegations in the motion or petition for termination." Ariz. R.P. Juv. Ct. 64(C). The notice also provides that "the hearings may go forward in the absence of the parent ... and may result in the termination of parental rights based upon the record and evidence presented."
 

 Id.
 

 ¶43 Rule 64(C) thus supplements the statutory process in two ways. It provides that the parent's rights may be waived and the allegations admitted only if the absence is "without good cause." But it also provides that the final determination of parental rights may occur at
 
 the same hearing
 
 at which the parent failed to appear, rather than at the previously scheduled final termination adjudication hearing. This scenario is referred to as an "accelerated hearing," which is what occurred here. As with the automatic waiver of rights and admission of allegations triggered by a parent's failure to appear at any judicial proceeding, we have not yet considered the constitutionality of such accelerated hearings.
 

 ¶44 Ordinarily, as DCS's counsel stated during oral argument, a final termination hearing can take hours, days, or even weeks. By contrast, a pretrial hearing accelerated into a final termination adjudication can be (as illustrated by the twenty-five-minute proceeding here) a perfunctory affair, the outcome of which is preordained. After all, the parent is unavailable to testify and her attorney is not expecting or prepared to put on a case and is unlikely to have brought witnesses or exhibits. And importantly, if the court finds that the parent has failed to appear without good cause, the absent parent is deemed to have admitted the allegations contained within DCS's petition to sever.
 
 See
 
 § 8-537(C); Ariz. R.P. Juv. Ct. 64(C).
 

 ¶45 Indeed, depending on how early in the process an accelerated hearing takes place, DCS may not have yet made initial disclosures, and the parent's counsel may not have had an opportunity to interview the state's witnesses. Nor may parental rehabilitation efforts, which must be considered in certain termination proceedings,
 
 see
 

 Alma S. v. Dep't of Child Safety
 
 ,
 
 245 Ariz. 146
 
 , 151 ¶ 15,
 
 425 P.3d 1089
 
 , 1094 (2018), have fully run their course. For all those reasons, such hearings offend the most basic and essential due process guarantee, the right to be heard "at a meaningful time and in a meaningful manner."
 
 Mathews v. Eldridge
 
 ,
 
 424 U.S. 319
 
 , 333,
 
 96 S.Ct. 893
 
 ,
 
 47 L.Ed.2d 18
 
 (1976) (internal quotation marks omitted).
 

 ¶46 Our recent decisions skew an already unbalanced playing field even more decisively toward the state. In
 
 Brenda D. v. Department of Child Safety
 
 , the Court interpreted "failed to appear" in A.R.S. § 8-863(C) and Arizona Rule of Procedure for Juvenile Court 66(D)(2) to apply to a parent who merely arrives after a hearing has started, rather than one who fails to appear at all.
 
 243 Ariz. 437
 
 , 443 ¶ 19,
 
 410 P.3d 419
 
 , 425 (2018). The Court went on to create procedures and penalties (that do not appear in the text of the statute or rule) for a parent who arrives late to a hearing.
 

 Id.
 

 at 444-45 ¶¶ 24-25,
 
 410 P.3d at 426-27
 
 . Under
 
 Brenda D.
 
 , a parent's mere late appearance without good cause serves as a failure to appear that triggers the default procedure under Rule 66(D)(2), a situation that Justice Timmer correctly noted "unacceptably dilutes the state's burden of proof because the parent is robbed of the ability to test the state's evidence."
 

 Id.
 

 at 450 ¶ 48,
 
 410 P.3d at 432
 
 (Timmer, J., dissenting in part and concurring in part).
 

 ¶47 Most recently, the Court in
 
 Alma S.
 
 concluded that the state need not prove by clear and convincing evidence that it has made diligent efforts to reunify the family or that a parent's rehabilitation efforts have failed before terminating parental rights. 245 Ariz. at 149 ¶ 8, 151 ¶ 15,
 
 425 P.3d at 1092, 1094
 
 (relegating such considerations to a determination of the child's best interests, which are subject to a lesser evidentiary standard). By contrast, due process requires that where the statutory ground for termination of parental rights is not a proxy for permanent unfitness, such factors must be considered in determining unfitness under
 the clear and convincing evidentiary standard.
 

 Id.
 

 at 154-55 ¶¶ 30-36,
 
 425 P.3d at 1097-98
 
 (Bolick, J., concurring in the result);
 
 see also
 

 Santosky
 
 ,
 
 455 U.S. at 759-60
 
 ,
 
 102 S.Ct. 1388
 
 ("The factfinding does not purport-and is not intended-to balance the child's interest in a normal family home against the parents' interest in raising the child.... [I]t entails a judicial determination that the parents are unfit to raise their own children.").
 

 ¶48 This parental termination process, in which the state need not establish by clear and convincing evidence that parental unfitness is irremediable, and in which a status conference may be accelerated on literally a moment's notice into an abbreviated final termination proceeding if the parent misses or arrives late to the hearing, even if she has diligently appeared at more than a dozen prior proceedings, does not adequately reflect the fundamental nature of the rights involved nor the gravity of the state's actions.
 
 See, e.g.
 
 ,
 
 Troxel
 
 ,
 
 530 U.S. at 65-66
 
 ,
 
 120 S.Ct. 2054
 
 (listing cases);
 
 Santosky
 
 ,
 
 455 U.S. at 753
 
 ,
 
 102 S.Ct. 1388
 
 ("Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life.").
 

 II.
 

 ¶49 Today we consider whether to import into the parental termination context a judicially created standard from a very different legal context; specifically, whether a parent must not only show good cause for why she missed a judicial proceeding within a termination action but must also present a meritorious defense to the entire termination action. The majority concludes she must do so. That requirement, when viewed through the appropriate constitutional prism and based on the text of the relevant rules, is untenable and inappropriate.
 

 ¶50 As noted earlier, § 8-537(C) authorizes a court to terminate the parental rights of a parent who does not appear at a prescribed proceeding but leaves the process to the rule-making authority of this Court. In turn, Rule 64(C) requires notice that a parent who fails to appear "without good cause" may be deemed to have waived legal rights and admitted the allegations in the severance petition and that the hearing may go forward and parental rights may be terminated in the parent's absence. Ariz. R.P. Juv. Ct. 64(C). Such a process is triggered by a "failure to appear ... without good cause."
 

 Id.
 

 The rule nowhere references "meritorious defense," either as a separate requirement or as a component of the good cause showing.
 

 ¶51 The majority holds that the meritorious defense requirement is imported through Rule 46(E), which provides that a motion to set aside a judgment "shall conform to the requirements of Rule 60(b)-(d), Ariz. R. Civ. P." Ariz. R.P. Juv. Ct. 46(E). But Rule 60 does not mention meritorious defense either. Rather, as pertinent here, Rule 60 allows a court to set aside a final judgment for "mistake, inadvertence, surprise, or excusable neglect" or "any other reason justifying relief." Ariz. R. Civ. P. 60(b)(1), (6). On the face of the rules, then, the mother here could have had the final judgment voided if she showed excusable neglect for her failure to attend or "any other reason justifying relief."
 

 Id.
 

 ¶52 The majority nonetheless holds that a parent seeking to vacate a judgment must show not only good cause as required by the rules, but that she also has a meritorious defense to the underlying severance petition. We have applied that requirement (though, inexcusably, we have not amended our rules to reflect it) in the ordinary civil context where after a party has failed to defend the action, a default is entered under Arizona Rule of Civil Procedure 55 (allowing default judgment where the party "has failed to plead or otherwise defend"), and the party seeks relief from that default.
 
 See
 

 Gonzalez v. Nguyen
 
 ,
 
 243 Ariz. 531
 
 , 534 ¶ 12,
 
 414 P.3d 1163
 
 , 1166 (2018) ;
 
 Richas v. Superior Court
 
 ,
 
 133 Ariz. 512
 
 , 514,
 
 652 P.2d 1035
 
 , 1037 (1982).
 

 ¶53 Arguing that the meritorious defense showing should be required here, the State relies primarily on
 
 Richas
 
 , where the Court applied the meritorious defense requirement in a slip-and-fall case in which a defendant sought to set aside a default.
 
 133 Ariz. at 517
 
 ,
 
 652 P.2d at 1040
 
 . With respect, this is not a slip-and-fall case, and we should not mechanically transport a doctrine from the personal
 injury context to one in which considerably different and greater interests are at stake. The majority makes the same error when it relies on various cases discussing the meritorious defense requirement where the only interest at stake was monetary loss.
 
 See
 

 Stanley v. Illinois
 
 ,
 
 405 U.S. 645
 
 , 651,
 
 92 S.Ct. 1208
 
 ,
 
 31 L.Ed.2d 551
 
 (1972) ("It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children come[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements." (alteration in original) (internal quotation marks omitted)).
 

 ¶54 It makes sense in the context of ordinary civil litigation to require a party against whom default was entered for failure to defend the action to demonstrate a meritorious defense in order to set it aside. It makes considerably less sense to require it of a party in jeopardy of losing her parental rights against whom default was entered only for failure to attend a status conference.
 
 See
 

 In re A.N.D.
 
 ,
 
 883 So. 2d 910
 
 , 914 n.3 (Fla. Dist. Ct. App. 2004) (contrasting default process for severance from a default under civil procedure rules);
 
 In re E.D.J.
 
 ,
 
 348 P.3d 1098
 
 , 1103 (Okla. Civ. App. 2014) ("Termination of a parent's parental rights is too serious to permit procedural shortcuts." (internal quotation marks omitted));
 
 cf.
 

 Mitchell v. Brown & Williamson Tobacco Corp.
 
 ,
 
 294 F.3d 1309
 
 , 1316-17 (11th Cir. 2002) (noting that a default "is a drastic remedy which should be used only in extreme situations, as the court has available to it a wide range of lesser sanctions" (citation omitted)).
 

 ¶55 Put another way, the meritorious defense requirement in the civil litigation context flows from a failure to defend under Rule 55.
 
 See
 
 Ariz. R. Civ. P. 55(a)(1) (providing that entry of default may be obtained when a party "has failed to plead or otherwise defend");
 
 Gonzalez
 
 , 243 Ariz. at 534 ¶¶ 11-12,
 
 414 P.3d at
 
 1166 ;
 
 Richas
 
 ,
 
 133 Ariz. at 514
 
 ,
 
 652 P.2d at 1037
 
 . Here, we do not have a Rule 55 predicate to justify requiring a meritorious defense. Rather, the predicate for what is essentially a default judgment is failure to attend a hearing "without good cause" under Rule 64(C). And Rule 46(E) refers to Rule 60, not to Rule 55, but it is Rule 55 that gives rise to the meritorious defense requirement.
 

 ¶56 In fact, Rule 64(C) 's default procedure is not even triggered
 
 until
 
 there has been a failure to appear without good cause-unlike Rule 55 which requires a meritorious defense as part of the good cause showing necessary to set aside a validly-entered default. Ariz. R. Civ. P. 55(c) (providing that "[t]he court may set aside an entry of default for good cause"). Rule 55 requires a showing of meritorious defense because there is "a principle of finality" that attaches to such a validly-entered default.
 
 See
 

 Gonzalez
 
 , 243 Ariz. at 534 ¶¶ 11-12,
 
 414 P.3d at 1166
 
 (internal quotation marks omitted). But here, Rule 64(C) explicitly provides that the accelerated process and concomitant default is only triggered by a failure to appear without good cause. Thus, the principle of finality that attaches to a default in the civil procedure context is not implicated under Rule 64(C) as it is not until the parent fails to show good cause that a judgment secured under Rule 64(C) 's process becomes effective under Rule 64(C) 's plain terms.
 

 ¶57 This Court has explicitly endorsed this exact notion in interpreting Rule 66(D)(2), which includes the same trigger-failure to appear without good cause-for the default procedure in a final termination hearing. In
 
 Brenda D.
 
 , the Court instructed that if "the parent does appear late but during the hearing, the juvenile court should immediately halt the proceedings to determine whether the parent can show 'good cause'
 
 for his or her late arrival
 
 ." 243 Ariz. at 448 ¶ 41,
 
 410 P.3d at 430
 
 (emphasis added). Only upon finding that no good cause exists for the late arrival may the juvenile court conclude that the parent has waived her legal rights.
 
 Id.
 
 ¶ 42.
 
 Brenda D.
 
 is extraordinarily clear: the necessary predicate for defaulting the parent is centered on a failure to appear without good cause.
 

 ¶58 Without that trigger, the default procedure under Rule 66(D)(2) is not implicated. And Rule 64(C) should be given the same reading as it has the same operative language.
 
 Cf.
 

 F.A.A. v. Cooper
 
 ,
 
 566 U.S. 284
 
 , 301,
 
 132 S.Ct. 1441
 
 ,
 
 182 L.Ed.2d 497
 
 (2012)
 

 (noting "the rule of construction that Congress intends the same language in similar statutes to have the same meaning");
 
 Wyatt v. Wehmueller
 
 ,
 
 167 Ariz. 281
 
 , 284,
 
 806 P.2d 870
 
 , 873 (1991) ("A court also should interpret two sections of the same statute consistently, especially when they use identical language."). Additionally, as the majority notes,
 
 supra
 
 ¶ 17, an acceleration converts a pretrial hearing into a final termination hearing, the exact type of hearing to which Rule 66(D)(2) applies. Thus, we should apply the same meaning to Rule 64(C) here as the Court applied to Rule 66(D)(2) in
 
 Brenda D.
 

 ¶59 In sum, the default and accelerated hearing process that Rule 64(C) provides for is predicated upon a failure to appear without good cause. Consequently, the Court errs by importing the meritorious defense showing required by Rule 55 here as that rule's set-aside procedure is predicated upon a validly-entered default. In contrast, a default under Rule 64(C) is not effective
 
 until
 
 the court finds that there was not good cause for the parent's failure to appear, the event that triggers the waiver of legal rights and default under the plain terms of Rule 64(C). The Court errs by failing to recognize the markedly different events that trigger application of Rule 64(C) versus Rule 55.
 

 ¶60 In short, nothing in the applicable juvenile court rules gives rise-expressly, conceptually, logically, or even impliedly-to a meritorious defense requirement. We are mixing apples and oranges in a way that makes for a constitutionally toxic concoction.
 

 III.
 

 ¶61 In deciding whether to apply in this context not merely Rule 60 but the meritorious defense requirement, its judicially created appendage, "we must strive to give [statutes and rules] meanings that avoid serious constitutional issues."
 
 Brenda D.
 
 , 243 Ariz. at 444 ¶ 23,
 
 410 P.3d at 426
 
 (internal quotation marks omitted). Whenever a rule or procedure deprives a person of a liberty or property interest, its constitutionality must be measured against the procedural due process factors set forth in
 
 Mathews
 
 ,
 
 424 U.S. at 335
 
 ,
 
 96 S.Ct. 893
 
 : (1) the importance of the private interests affected by the proceeding, (2) the risk of error created by the state's chosen procedure, and (3) the countervailing government interest supporting the challenged procedure.
 
 See
 

 Santosky
 
 ,
 
 455 U.S. at 754
 
 ,
 
 102 S.Ct. 1388
 
 (applying
 
 Mathews
 
 factors to determine the appropriate burden of proof in child termination cases). Those factors here weigh strongly against importing the meritorious defense requirement into the termination of parental rights context.
 

 ¶62 The majority views the meritorious defense requirement in isolation, emphasizing that it is required only to dissolve a default judgment in which the parent's rights have been terminated.
 
 Supra
 
 ¶¶ 26-30. But the lack of due process safeguards in the accelerated termination process cannot be detached from the burden imposed on the parent seeking to recover her rights. The majority contends that due process is not offended because the meritorious defense requirement creates only a "minimal burden," as "[a]n attorney at all familiar with a parent's case could, within three months after severance, articulate a meritorious defense if one exists."
 
 See
 

 supra
 
 ¶ 29. This notion is contrary to due process jurisprudence. The Supreme Court has recognized, "[w]here a person has been deprived of property in a manner contrary to the most basic tenets of due process, 'it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merits.' "
 
 Peralta v. Heights Med. Ctr., Inc.
 
 ,
 
 485 U.S. 80
 
 , 86-87,
 
 108 S.Ct. 896
 
 ,
 
 99 L.Ed.2d 75
 
 (1988) (quoting
 
 Coe v. Armour Fertilizer Works
 
 ,
 
 237 U.S. 413
 
 , 424,
 
 35 S.Ct. 625
 
 ,
 
 59 L.Ed. 1027
 
 (1915) ). Rather, "the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions."
 
 Hamdi v. Rumsfeld
 
 ,
 
 542 U.S. 507
 
 , 530,
 
 124 S.Ct. 2633
 
 ,
 
 159 L.Ed.2d 578
 
 (2004) (quoting
 
 Carey v. Piphus
 
 ,
 
 435 U.S. 247
 
 , 266,
 
 98 S.Ct. 1042
 
 ,
 
 55 L.Ed.2d 252
 
 (1978) ). As such, "only wip[ing] the slate clean" can restore a party "to the position he would have occupied had due process of law been accorded to him in the first place."
 
 Peralta
 
 ,
 
 485 U.S. at 87
 
 ,
 
 108 S.Ct. 896
 
 (alteration in original) (internal quotation marks omitted).
 

 ¶63 Moreover, we must take a holistic view of the overall process and not merely examine it snippet by snippet.
 
 See
 

 Fusari v. Steinberg
 
 ,
 
 419 U.S. 379
 
 , 389,
 
 95 S.Ct. 533
 
 ,
 
 42 L.Ed.2d 521
 
 (1975) (stating courts review "the sufficiency of the entire process" that effectuates the deprivation to ensure conformity with due process). Therefore, the contours of the accelerated hearing process must be factored in when we are analyzing whether the process as a whole comports with due process as it is the
 
 entirety
 
 of the process that causes the deprivation.
 
 See
 

 Santosky
 
 ,
 
 455 U.S. at 763-64
 
 ,
 
 102 S.Ct. 1388
 
 (reviewing whether burden of proof to establish severance grounds sufficiently protected against erroneous deprivations in light of the potential for error embodied in the entire severance process);
 
 Fusari
 
 ,
 
 419 U.S. at 389
 
 ,
 
 95 S.Ct. 533
 
 ("[T]he formality and procedural requisites for [a due process] hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." (alterations in original) (internal quotation marks omitted)). When parental rights are terminated at a hearing that was not contemplated for that purpose and at which the parent is deemed by law to have forfeited her rights, the burdens subsequently placed on the parent to vacate that judgment bear careful scrutiny under the
 
 Mathews
 
 test.
 

 ¶64 The first
 
 Mathews
 
 factor weighs heavily in favor of the parent. "A parent's interest in the accuracy and justice of the decision to terminate his or her parental status is ... a commanding one."
 
 Lassiter
 
 ,
 
 452 U.S. at 27
 
 ,
 
 101 S.Ct. 2153
 
 ;
 
 see also
 

 Santosky
 
 ,
 
 455 U.S. at 758
 
 ,
 
 102 S.Ct. 1388
 
 . Not only is a parent's liberty interest fundamental, but a "decision terminating parental rights is
 
 final
 
 and irrevocable. ... Few forms of state action are both so severe and so irreversible."
 
 Santosky
 
 ,
 
 455 U.S. at 759
 
 ,
 
 102 S.Ct. 1388
 
 ;
 
 see also
 

 Alyssa W. v. Justin G.
 
 ,
 
 245 Ariz. 599
 
 , 601 ¶ 11,
 
 433 P.3d 3
 
 , 5 (App. 2018).
 

 ¶65 The second factor-the risk of error resulting from the state's chosen procedure-also weighs against importing the meritorious defense requirement. The accelerated final parental rights determination occurs, by definition, before the scheduled final adjudication. At that point in the process, the parent may not have had an opportunity to interview the state's witnesses, the state may not have yet provided initial disclosures, and the parent may not have completed rehabilitation services.
 
 See
 

 Trisha A. v. Dep't of Child Safety
 
 ,
 
 245 Ariz. 24
 
 , 33 ¶ 26,
 
 424 P.3d 425
 
 , 434 (App. 2018) ("At the time of such a preliminary proceeding, often months before the scheduled severance hearing, it is difficult to imagine what meaningful evidence a parent could offer in order to prove a meritorious defense.").
 

 ¶66 Even though the parent's burden is nominally light, the risk of erroneous deprivation is great. What qualifies as a meritorious defense lies in the eye of the beholder (the trial court) and that judgment will be disturbed only on an abuse of discretion.
 
 Adrian E. v. Ariz. Dep't of Econ. Sec.
 
 ,
 
 215 Ariz. 96
 
 , 101 ¶ 15,
 
 158 P.3d 225
 
 , 230 (App. 2007) ;
 
 see also
 

 Santosky
 
 ,
 
 455 U.S. at 762-63
 
 ,
 
 102 S.Ct. 1388
 
 (noting the risk of error is great where there are "imprecise substantive standards" and the court possesses great discretion in applying them). The majority, recognizing this reality, instructs courts to exercise their discretion carefully.
 
 See
 

 supra
 
 ¶ 14. But the rules contain no standards to guide such discretion (perhaps because the rules do not even mention the meritorious defense requirement), and we may overturn a trial court ruling not when the discretion is unwisely exercised but only when it is abused.
 

 ¶67 The third
 
 Mathews
 
 factor requires us to examine the state's interests. Here, the State sets forth two interests: the child's interest in a permanent home and administrative efficiency. But under the circumstances, the state's interests do not outweigh the parent's. The accelerated proceeding short-circuits a process that is calculated to protect both the parent's and child's interests.
 
 See
 

 Santosky
 
 ,
 
 455 U.S. at 767
 
 ,
 
 102 S.Ct. 1388
 
 (noting that state's interest "is served by procedures that promote an accurate determination of whether the natural parents can and will provide a normal home"). The child is already removed from any dangerous conditions and circumstances.
 
 Trisha A.
 
 , 245 Ariz. at 34 ¶ 27,
 
 424 P.3d at 435
 
 . A schedule
 culminating in a final termination hearing, in which a full presentation and review of relevant evidence take place, is already set.
 

 Id.
 

 Moreover, although the state's interest in efficiency is "legitimate, it is hardly significant enough to overcome private interests as important as those here."
 
 See
 

 Lassiter
 
 ,
 
 452 U.S. at 28
 
 ,
 
 101 S.Ct. 2153
 
 . Forcing the parent to prematurely present a defense, even when she has provided good cause for missing a pretrial hearing, does not materially advance the state's interests, although it adds yet another procedural obstacle to the parent seeking to protect her rights that increases the odds of erroneous deprivation of her parental rights.
 
 Cf.
 

 In re E.D.J.
 
 ,
 
 348 P.3d at 1103
 
 (concluding that default for failure to appear in a termination action was erroneously entered under similar facts).
 

 ¶68 Likewise, imposing the meritorious defense requirement plainly infringes on the fundamental right of parents to direct the upbringing of their children protected by § 1-601(A). The State has failed to show that requiring a meritorious defense to set aside a default under Rule 64(C) advances a compelling government interest of the highest order, that it is narrowly tailored to achieve a compelling government interest, and that the governmental interest cannot be adequately served by less restrictive means (such as requiring a set-aside upon a parent's showing of good cause for failing to appear).
 
 See
 
 § 1-601(B).
 

 ¶69 Finally, today's decision offends another essential of due process, the right to know how to comply with the law.
 
 F.C.C. v. Fox Television Stations, Inc.
 
 ,
 
 567 U.S. 239
 
 , 253,
 
 132 S.Ct. 2307
 
 ,
 
 183 L.Ed.2d 234
 
 (2012). I have previously criticized this Court for creating new rules in our decisions without amending the actual rules that people should be able to rely upon to learn the procedural requirements that may profoundly affect their rights and their lives.
 
 See, e.g.
 
 ,
 
 Phillips v. O'Neil
 
 ,
 
 243 Ariz. 299
 
 , 306 ¶ 34,
 
 407 P.3d 71
 
 , 78 (2017) (Bolick, J., dissenting);
 
 Allen v. Sanders
 
 ,
 
 240 Ariz. 569
 
 , 574-75 ¶¶ 28-30,
 
 382 P.3d 784
 
 , 789-90 (2016) (Bolick, J., concurring in the result). The majority's decision creates not a roadmap but a labyrinth, and not just for the unwary but even for those trained in the law.
 

 ¶70 How would an unrepresented parent learn that she must present a meritorious defense to the underlying action in order to set aside termination of her parental rights following an accelerated hearing? She could not learn of that requirement from the relevant statute, or even the relevant juvenile court rule, which indicates that she need show only good cause for her absence. Instead, she would need to find a provision elsewhere in the juvenile rules that incorporates a provision in a different set of rules. Even when she examined the pertinent civil procedure rules, she would not learn about the meritorious defense requirement because it does not appear there either. Rather, she would have to determine that the applicable requirement is contained not in the rules but in court decisions, not in the juvenile law context but unrelated civil litigation, and then assume the requirement applies here.
 

 ¶71 For the foregoing reasons, I would not stray beyond the text of our rules to require more than good cause for failing to appear at a hearing in order to vacate a termination order resulting from an accelerated hearing. The Court's decision not only transgresses the plain text but interprets the rules in a way that violates due process. I would affirm the court of appeals' holding that "[t]hese proceedings deprived Mother of a fundamentally fair severance hearing."
 
 Trisha A.
 
 , 245 Ariz. at 35 ¶ 33,
 
 424 P.3d at 436
 
 .
 

 IV.
 

 ¶72 Little is likely to change as a result of today's decision because the process is already overwhelmingly weighted against a parent seeking to preserve her legal status in a termination proceeding. As I recently observed, according to DCS statistics, termination petitions in recent years resulted in severance of parental rights approximately 99.94% of the time.
 
 Alma S.
 
 , 245 Ariz. at 153 ¶ 28,
 
 425 P.3d at 1096
 
 (Bolick, J., concurring in the result). But with each decision by this Court, the playing field grows more uneven, and the precious constitutional protections to which all parents are entitled further erode.
 

 ¶73 Nothing in this dissenting opinion should be taken to impugn DCS or its vital mission to protect vulnerable children. But the process our state has constructed creates the very real prospect that parents will lose their children not because they deserve to, but because they are unable to effectively defend their rights in a system that is stacked hopelessly against them. For those reasons, and with great respect to my colleagues, I dissent.