IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

SAN DIEGO GAS & ELECTRIC COMPANY,
*Plaintiff/Appellee*,

*v.*

ARIZONA DEPARTMENT OF REVENUE, ET AL.
*Defendants/Appellants*.

No. CV-23-0283-PR
Filed January 31, 2025

Appeal from the Arizona Tax Court
The Honorable Danielle J. Viola, Judge
No. TX2019-001758
**AFFIRMED**

Opinion of the Court of Appeals, Division One
256 Ariz. 375 (App. 2023)
**VACATED IN PART, DEPUBLISHED IN PART**

COUNSEL:

Paul J. Mooney (argued), Mooney, Wright, Moore & Wilhoit, PLLC, Scottsdale, Attorneys for San Diego Gas & Electric Company

Kristin K. Mayes, Arizona Attorney General, Scot G. Teasdale, Assistant Attorney General, Kimberly Cygan, Assistant Attorney General, Jerry A. Fries (argued), Assistant Attorney General, Phoenix, Attorneys for Arizona Department of Revenue, Maricopa County, and Yuma County

JUSTICE MONTGOMERY authored the opinion of the Court, in which CHIEF JUSTICE TIMMER, VICE CHIEF JUSTICE LOPEZ and JUSTICES BOLICK, BEENE, KING, and BRUTINEL (RETIRED) joined.[*]

JUSTICE MONTGOMERY, Opinion of the Court:

¶1         The Arizona Constitution provides that all property not exempt by law is subject to taxation. Ariz. Const. art. 9, § 2(A). The property tax formula is generally comprised of four elements, "classification, valuation, assessment ratio, and tax rate," with county assessors responsible for valuing most property in Arizona. *Aileen H. Char Life Int. v. Maricopa County*, 208 Ariz. 286, 291 ¶ 8 (2004). As relevant here though, the legislature has directed the Arizona Department of Revenue ("ADOR") to centrally value all of the property "owned . . . and used by taxpayers in the . . . [o]peration of an electric transmission . . . system." A.R.S. § 42-14151(A)(5). ADOR therefore annually determines the value of specific components of electric transmission property, *see* § 42-14154(B), as well as its overall full cash value, *see* § 42-14153(A). "Electric transmission" property is comprised of four components: a plant; construction work in progress ("CWIP");[1] materials and supplies; and environmental protection facilities. § 42-14154(G)(4). Values are then allocated to each taxing jurisdiction pursuant to § 42-14157 and transmitted to each respective county assessor per § 42-14153(B)(1). The assessor then applies an assessment ratio based on the property classification set by statute and the tax rate. *See Aileen H.*, 208 Ariz. at 291 ¶ 8.

¶2         This case concerns whether the valuation for a reduced plant in service cost calculated pursuant to § 42-14154(B)(2) can be negative, and whether such a result can offset the valuation of the CWIP component. We hold that the calculation prescribed to determine a reduced plant in service cost does not preclude a negative valuation and that, although the negative valuation necessarily affects the full cash value determination inclusive of all electric transmission property components, it does not "offset"—as that

---

[*] Although Justice Brutinel retired prior to the issuance of this Opinion, he participated in the decision of the Court.

[1] "'Construction work in progress' means the total of the balances of work orders for an electric transmission . . . plant in process of construction on December 31 of the preceding calendar year, exclusive of land rights and licensed vehicles." § 42-14154(G)(1).

term is understood in Arizona's tax system—the valuation of CWIP.

## I. BACKGROUND

**¶3**         San Diego Gas & Electric ("SDG&E") is a California corporation that owns an interstate electric transmission line running from the Palo Verde Generating Station in Maricopa County through Yuma County and into California, terminating in San Diego. SDG&E's property in Arizona is therefore subject to taxation by the State of Arizona and to valuation by ADOR. *See* § 42-14151.

**¶4**         In 2020, pursuant to the requirements of § 42-14152(A), SDG&E reported to ADOR a net "original plant in service"[2] valuation of $48,817,396 and a net "related accumulated provision for depreciation"[3] ("accumulated depreciation") amount of $51,446,397. SDG&E also reported a CWIP valuation of $3,648,475.[4] To report the total value for all its property, SDG&E subtracted the accumulated depreciation from the original plant in service cost, resulting in a negative valuation of $2,629,001, and then added the valuation of CWIP to arrive at a "Full Cash Value All Property" of $1,019,474.

**¶5**         ADOR disagreed with SDG&E's use of an accumulated depreciation value that exceeded the original plant in service cost. ADOR separately determined that accumulated depreciation should be $30,354,140, which, rounding down, resulted in a reduced plant in service cost of $18,463,000. Adding in a rounded down CWIP valuation of $3,648,000, ADOR calculated the full cash value as $22,111,000.

---

[2] "'Original plant in service cost' means the actual cost of acquiring or constructing property including additions, retirements, adjustments and transfers, but without deducting related accumulated provision for depreciation, amortization or other purposes." § 42-14154(G)(7).

[3] Because what constitutes "related accumulated provision for depreciation" and the way it is applied is not before us, we do not address the interpretation or application of the term. *See* § 42-14154(F) (providing that "[a]ll terms and applications of terms shall be interpreted according to the federal energy regulatory commission uniform system of accounts [("FERC USoA")] for electric and gas utilities in effect on January 1, 1989").

[4] SDG&E did not have any other property to report.

¶6        SDG&E filed a complaint in the tax court under §§ 42-16204 and -16207, appealing ADOR's determination of the full cash value. Thereafter, the parties filed competing motions for summary judgment, each asking the tax court to uphold their respective full cash value calculations. The tax court granted SDG&E's motion and denied ADOR's, finding that SDG&E's valuation correctly followed the requirements of § 42-14154.

¶7        ADOR appealed the ruling, arguing that, among other things, § 42-14154 does not permit a negative valuation for a reduced plant in service cost. The court of appeals agreed, noting:

> Nothing in the plain language of A.R.S. § 42-14154 or the related valuation statutes, A.R.S. §§ 42-14151 to -14153, expressly provides for or precludes a negative full cash valuation of a plant in service. But applying a "sensible construction to avoid absurd results," *Mountainside MAR, LLC v. City of Flagstaff*, 253 Ariz. 448, 450, ¶ 9 (App. 2022), we are not persuaded that the legislature intended to permit a negative full cash valuation for a plant in service, and therefore hold that accumulated depreciation may not reduce the full cash value of a plant in service to a negative number.

*San Diego Gas & Elec. Co. v. Ariz. Dep't of Revenue*, 256 Ariz. 375, 380 ¶ 21 (App. 2023). Regarding the reduced plant in service cost and CWIP, the court "appl[ied] the plain and unambiguous language of A.R.S. § 42-14154(B)" to conclude:

> [T]he "related" accumulated depreciation that A.R.S. § 42-14154(B) expressly states shall reduce the original plant in service cost may not reduce the value of construction work in progress, which is separately calculated under subsection (C) as "fifty per cent of the amount spent and entered on the taxpayer's accounting records as of December 31 of the preceding calendar year."

*Id.* ¶ 22. The court consequently vacated the tax court's judgment and remanded for further proceedings. *Id.* at 381 ¶ 24.

4

¶8          Both ADOR and SDG&E petitioned this Court for review of the court of appeals' opinion. We denied review of ADOR's petition and granted review of SDG&E's cross-petition.[5] After oral argument, we ordered further briefing to address: "What is the relationship between A.R.S. §§ 42-14154, -1[4157], -15001 and what consequence, if any, does a negative reduced plant in service cost have on the allocations provided for in A.R.S. § 42-14157?" Both parties asserted in supplemental briefing that §§ 42-14157 and -15001 have no bearing on the narrow issue before us: whether accumulated depreciation can reduce the full cash value of a plant in service to a negative number or offset the value of unrelated property, which are recurring issues of statewide importance. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

## II. DISCUSSION

¶9          We review de novo the tax court's ruling on a motion for summary judgment, *Wilderness World, Inc. v. Ariz. Dep't of Revenue*, 182 Ariz. 196, 198 (1995), as well as the construction and interpretation of Arizona tax statutes, *SolarCity Corp. v. Ariz. Dep't of Revenue*, 243 Ariz. 477, 480 ¶ 8 (2018).

### A. Can the Reduced Plant in Service Cost be Negative?

¶10          We begin by addressing whether § 42-14154 permits a negative valuation for the reduced plant in service cost. SDG&E argues that the tax court correctly applied the law, which resulted in a negative valuation.[6] Conversely, ADOR argues that a negative valuation would be "absurd on its face and violate[] every applicable provision of § 42-14154," but nonetheless does not oppose it if the relevant counties will "owe no

---

[5] ADOR sought review of whether the cost of removal for a plant at the end of its economic life could be part of accumulated depreciation.

[6] SDG&E also contests ADOR's calculations and asserts that, if done correctly, there would be no negative valuation in the first place. Our resolution moots this argument.

monies to [SDG&E] arising out of negative property values."[7]

¶11        "Absent ambiguity, we interpret statutes according to their plain language," *In re Drummond*, 543 P.3d 1022, 1025 ¶ 5 (Ariz. 2024), and we determine plain meaning "in [its] broader statutory context." *Id.* (quoting *Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, 255 Ariz. 382, 385 ¶ 11 (2023)); *see also* Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012) [hereinafter Scalia & Garner] (explaining that courts interpret a statute's plain language in context, because "[c]ontext is a primary determinant of meaning").  In the event of ambiguity, we construe statutes in favor of the taxpayer. *See City of Phoenix v. Orbitz Worldwide Inc.*, 247 Ariz. 234, 241 ¶ 22 (2019).  When tasked with "construing a specific provision, we look to the statute as a whole and we may also consider statutes that are *in pari materia*—of the same subject or general purpose—for guidance and to give effect to all of the provisions involved." *Stambaugh v. Killian*, 242 Ariz. 508, 509 ¶ 7 (2017).  Finally, "we seek to harmonize statutory provisions and avoid interpretations that result in contradictory provisions." *Lagerman v. Ariz. State Ret. Sys.*, 248 Ariz. 504, 511 ¶ 35 (2020) (internal quotation marks omitted) (quoting *Premier Physicians Grp., PLLC v. Navarro*, 240 Ariz. 193, 195 ¶ 9 (2016)).

¶12        The legislature has instructed ADOR to "annually determine the valuation, in the manner prescribed by this article, of all property, owned or leased, and used by taxpayers" in the business of operating an electric transmission system.  § 42-14151(A)(5).  The manner prescribed is set forth in § 42-14154.  Section 42-14154(B)(1) requires ADOR to initially determine the original plant in service cost.  That cost is then reduced by accumulated depreciation.  § 42-14154(B)(2)(a).  The very next provision, § 42-14154(B)(2)(b), requires ADOR to then further reduce the original plant in service cost by any "reduction in value caused by a state or federal governmental order prohibiting total or partial physical use of [the] property for periods of more than six months."    Moreover,

_____

[7] ADOR also argues that a negative plant in service cost or negative full cash value would be a prohibited exemption from taxation under article 9, section 2(A) of the Arizona Constitution.  ADOR waived this argument below, and we therefore decline to address it here. *See Mesquite Power, LLC v. Ariz. Dep't of Revenue*, 552 P.3d 502, 510 ¶ 35 (Ariz. 2024) (declining to address issue that was not preserved for appellate review).

§ 42-14154(B)(2)(b) also provides that "[a]ny reductions in value . . . *shall not exceed the cost of the restricted property less accumulated depreciation*." (Emphasis added.) Section 42-14154(B)(2)(b) thus expressly precludes a negative valuation caused by a stop-use order.

¶13 Conversely, the statute setting out the calculation for a reduction based on accumulated depreciation does not have similar limiting language. *See* § 42-14154(B)(2)(a). And § 42-14154(B)(2)(b) is not the only provision of article 4, chapter 14, title 42 that expressly limits the amount by which a valuation can be reduced. *See* § 42-14155(B) ("Depreciation shall not exceed ninety percent of the adjusted original cost."); § 42-14156(A)(5) ("The valuation prescribed in paragraph 2 of this subsection shall not reduce the valuation below ten per cent of the cost of the real property improvements. The valuation prescribed in paragraph 3 of this subsection shall not reduce the valuation below ten per cent of the cost of the personal property."). Because § 42-14154(B)(2)(a) prescribes a particular method for reducing the original plant in service cost without further limitation, we decline to read any similar limiting language into the provision. *See ACLU of Ariz. v. Ariz. Dep't of Child Safety*, 251 Ariz. 458, 463 ¶ 20 (2021) ("[W]hen the legislature has specifically included a term in some places within a statute and excluded it in other places, courts will not read that term into the sections from which it was excluded." (quoting *Arpaio v. Citizen Publ'g Co.*, 221 Ariz. 130, 133 ¶ 9 (App. 2008))); *Egan v. Fridlund-Horne*, 221 Ariz. 229, 239 ¶ 37 (App. 2009) ("[W]e presume that when the legislature uses different wording within a statutory scheme, it intends to give a different meaning and consequence to that language."); *see also* Scalia & Garner, 93 (discussing the principle of the omitted-case cannon that "a matter not covered is to be treated as not covered"). We also note that a negative reduced plant in service cost valuation would not be an absurd result. If the cost of removal is greater than the salvage value at the time of a plant's retirement, the resulting valuation could be negative. *See generally* Public Utility Accounting: A Public Power System's Introduction to the [FERC USoA] 98 (2012). Hence the provision for calculating a reduced plant in service cost does not preclude a negative valuation. The court of appeals erred in concluding otherwise.

¶14 Using the values reported by SDG&E for the 2020 tax year and following the plain language of § 42-14154(B), the calculation for the reduced plant in service cost results in a valuation of negative $2,629,001. With respect to ADOR's concern that a negative reduced plant in service

valuation could require a taxing jurisdiction to refund monies to a utility taxpayer, that issue is not before us and we decline to speculate about any such consequence. *See Avitia v. Crisis Preparation & Recovery Inc.*, 256 Ariz. 198, 207 ¶ 43 (2023) (declining to speculate about which sections of restatements concerning torts might apply to the facts of the case before the Court).

**B. Offsetting Property Valuations**

**¶15** Although SDG&E and ADOR agree that the valuations calculated in § 42-14154 are used to determine the full cash value of electric transmission property, the parties disagree on whether a negative reduced plant in service cost affects the valuation of CWIP. SDG&E argues that the property subject to valuation pursuant to § 42-14154 consists of "several components that are all summed up to arrive at a full cash value." Therefore, per SDG&E, a negative valuation for reduced plant in service cost can effectively "offset" the valuation of CWIP. Conversely, ADOR argues that the reduced plant in service cost and CWIP have distinct valuation methods with no relationship to each other.

**¶16** To resolve this issue, we must consider the relationship between the component valuation calculations and the requirement for ADOR to determine the full cash value for all of SDG&E's electric transmission property. Based on the additional briefing from the parties as ordered by the Court, we will only consider the valuations prescribed by § 42-14154 in the specific context of determining the overall full cash value without regard to the use of such valuations in other statutes.

**¶17** First, § 42-14153(A) requires ADOR to "find the full cash value of [electric transmission property] . . . that operates in this state." Additionally, A.R.S. § 42-14003 requires ADOR to notify property owners "of the final full cash value on or before August 31" and directs ADOR to "consider . . . information that is otherwise available" to determine valuations. "Full cash value" is defined, "for property tax purposes, [as] the value determined as prescribed by statute." A.R.S. § 42-11001(6). Section 42-14154(A) states that "[t]he valuation of all electric transmission . . . property that is subject to valuation for tax purposes *shall be determined in the manner prescribed by this section*." (Emphasis added.) The relevant portions of § 42-14154 provide:

B. Electric transmission . . . property shall be valued as follows:

1. The department shall determine the original plant in service cost.

2. The original plant in service cost shall be reduced by:

(a) The related accumulated provision for depreciation.

. . . .

C. The value of construction work in progress is fifty per cent of the amount spent and entered on the taxpayer's accounting records as of December 31 of the preceding calendar year as construction work in progress.

D. The value of materials and supplies is the total cost of such property as of December 31 of the preceding calendar year.

E. The value of environmental protection facilities that are required by law is fifty per cent of the depreciated cost of the facilities.

Thus, § 42-14154 expressly prescribes *separate* calculations for each component.

**¶18**     However, § 42-14154 does not prescribe a calculation for determining the full cash value of all electric transmission property. *Cf.* A.R.S. §§ 42-14204 (providing for the summation of calculations to determine an overall value of pipeline property) and -14355 (providing specifically for computing an "Arizona full cash value" from values determined in the section). Nevertheless, as noted, § 42-14003(A) directs ADOR to "consider . . . information that is otherwise available" in determining valuations. Therefore, although the legislature has not directed the summation of the component valuations to arrive at a full cash value, the only source for such a determination is that provided by the calculations prescribed by § 42-14154.

**¶19**          In light of our duty to harmonize and give effect to the statutes directing ADOR to value electric transmission property and notify property owners of its full cash value, we find that summing the valuations prescribed by § 42-14154 is necessarily the way to determine the full cash value of SDG&E's property. *See also* Jeffrey J. McNaught et al., *The Property Tax Deskbook* § 3-340(10) (2022) (describing the operation under § 42-14154: Net cost of plant in service (original plant in service cost - depreciation) + 50% Net cost of environmental protection facilities + 50% CWIP + Total cost of materials and supplies + Net cost of leased operating property = Full Cash Value).   Consequently, any single negative valuation for one component under § 42-14154, when summed with the valuations of other components, will reduce the overall full cash value.   Furthermore, it is incorrect to characterize the result of adding a negative valuation to one or more positive valuations as an "offset."   In Arizona's tax statutes, an offset generally refers to a credit against a taxpayer's tax liability. *See generally* A.R.S. §§ 42-1106, -1118(D), -2057, -2060.   Thus, a negative reduced plant in service cost does not "offset" the valuation of CWIP as determined by § 42-14154(C), rather it necessarily reduces the overall full cash value.

### III. CONCLUSION

**¶20**          For the foregoing reasons, we vacate ¶¶ 19–23 of the court of appeals' opinion and that portion of the court's holding in ¶ 24 concerning a negative valuation for plant in service cost.   We also order that the remainder of the opinion be depublished.   Ariz. R. Sup. Ct. 111(g).   The tax court's grant of summary judgment is affirmed.   Because SDG&E did not "specifically state the statute, rule, decisional law, contract, or other authority for an award of attorneys' fees" under Rule 21(a)(2) of the Arizona Rules of Civil Appellate Procedure, we deny the request for attorney fees.